JUDITH RIDEOUT & another[1] *vs.* CRUM & FORSTER
COMMERCIAL INSURANCE & others.[2]

Suffolk. April 4, 1994. - May 11, 1994.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & GREANEY, JJ.

*Insurance*, General liability insurance, Coverage, Construction of policy.
*Employment*, Discrimination, Termination. *Anti-Discrimination Law*,
Termination of employment, Sex. *Words*, "Occurrence."

Plaintiffs who obtained a final judgment against their former employer in
an action to enforce orders of a commissioner of the Massachusetts
Commission Against Discrimination awarding damages for sex discrim-
ination could not prevail on their claims for declaratory relief and to
reach and apply the proceeds of the employer's insurance policies,
where the policies excluded coverage for injuries "expected or intended
from the standpoint of the insured," and where the intentional acts of
discrimination and retaliation found by the commissioner implied that
the employer intended the harm that resulted, thus the policies did not
provide coverage for the employees' injuries. [760-764]

CIVIL ACTION commenced in the Superior Court Depart-
ment on April 24, 1990.

The case was heard by *Elbert Tuttle*, J., on motions for
summary judgment.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Martin J. Alperen* for the plaintiffs.

*J. Kenneth Griffin* for the defendants.

*Scott Harshbarger*, Attorney General, & *George P. Na-
politano*, Special Assistant Attorney General, for Massachu-

---

[1]Marilyn Thomas.

[2]United States Fire Insurance Company and North River Insurance
Company.

setts Commission Against Discrimination, amicus curiae, submitted a brief.

NOLAN, J. The plaintiffs, Judith Rideout and Marilyn Thomas, appeal from a Superior Court judge's dismissal of their action to reach and apply insurance proceeds pursuant to G. L. c. 214, § 3 (1992 ed.), and for declaratory relief pursuant to G. L. c. 231A (1992 ed.), against the defendant insurance companies. The Massachusetts Commission Against Discrimination (MCAD) found that the plaintiffs' former employer, Hub Manufacturing Company, Inc. (Hub), had unlawfully discriminated against them on the basis of their sex and had ordered Hub to pay damages. Then, in an enforcement action brought in the Superior Court, the plaintiffs obtained a final judgment against Hub. The plaintiffs then brought this action to collect the amount of the enforcement judgment from the defendants, which insured Hub during the time of the discriminatory acts. Concluding that the relevant insurance policies of the defendants failed to cover the plaintiffs' claims, the judge allowed the defendants' motion for summary judgment. The plaintiffs appealed. We transferred this case to this court on our own motion. We affirm.

On May 12, 1981, the plaintiffs filed complaints against Hub with the MCAD alleging that Hub discriminated against them in the terms and conditions of their employment. More specifically, the plaintiffs alleged that Hub discriminated against them, in violation of G. L. c. 151B and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., by denying them equal pay, the opportunity to work overtime, and promotions on account of their gender. Shortly thereafter, Hub laid off the plaintiffs as part of a general short-term layoff. When they were not recalled, the plaintiffs amended their complaints on September 17, 1981, to include charges of retaliation. The cases were consolidated for public hearing by agreement of the parties. A public hearing was conducted at the MCAD offices on October 22, November 7 and 8, 1985. On March 15, 1988, a MCAD hearing commissioner found that Hub had unlaw-

fully discriminated and retaliated against the plaintiffs and ordered Hub to pay the plaintiffs damages. The pertinent findings of the commissioner are as follows.

In 1980, Hub, which was primarily involved in the business of manufacturing swimming pools, hired the plaintiffs as general floor workers and sealers. At all times relevant, Archie Taylor supervised Hub's day-to-day business operations and was responsible for personnel matters, including job assignments, hiring, and firing. At Hub, there was a disparity between pay rates and pay increases of men and women employees who performed the same work. The pay disparity had no correlation with the seniority of the employees. Taylor denied the plaintiffs the opportunity to work overtime because of their gender, stating that men needed the overtime work to support their families. Taylor failed to transfer the plaintiffs to higher paying positions because of their gender, stating that "[n]o woman has ever worked in this department and never will . . . I only hire men, and women would distract them."

After the plaintiffs requested transfers and filed complaints with the MCAD, Taylor retaliated against the plaintiffs by reassigning them to the most menial, repetitive, and isolated tasks within the company. The reassignments caused the plaintiffs to feel angry, frustrated, humiliated, and embarrassed throughout the remainder of their employment. The plaintiffs were then laid off during the summer of 1981 at the time of the general layoff. On laying off the plaintiffs, Taylor stated that the plaintiffs "under no circumstances would ever be hired back because they are a couple of troublemakers." Taylor failed to recall the plaintiffs, although he rehired other laid-off employees, in retaliation for their filing the complaints.

Based on these findings, the hearing commissioner held that the plaintiffs had proved that Hub disparately treated them on the basis of their sex in violation of G. L. c. 151B, § 4 (1), and had retaliated against them in violation of G. L. c. 151B, § 4 (4). The commissioner then ordered Hub to pay damages to the plaintiffs for lost wages and emotional distress. The damages for emotional distress were awarded to

compensate the plaintiffs for the emotional harm suffered due to Hub's acts of retaliation.

On March 7, 1986, without having paid the plaintiffs the amount of the MCAD order, Hub ceased operations and assigned its assets to creditors. In December, 1988, the plaintiffs sought to enforce the MCAD order against Hub and two successor corporations pursuant to G. L. c. 151B, § 6 (1992 ed.), in the Superior Court. On April 27, 1989, summary judgment was granted in favor of the two successor corporations. Hub defaulted and, on February 2, 1990, the plaintiffs obtained a final judgment against Hub. Pursuant to this judgment, the court ordered Hub to pay Rideout the sum of $45,519.50, interest in the sum of $47,674.02, and costs and to pay Thomas the sum of $45,306, interest in the sum of $47,450.48, and costs.

The defendants insured Hub during the period that the acts of discrimination occurred. On March 30, 1990, the defendants denied coverage for the plaintiffs' claims. On April 24, 1990, the plaintiffs instituted this action in the Superior Court. On cross motions for summary judgment, the Superior Court judge allowed the defendants' motion for summary judgment, concluding that the policies in issue did not cover the plaintiffs' claims.

General Laws c. 214, § 3 (9), provides the Superior Court with jurisdiction over "[a]ctions to reach and apply the obligation of an insurance company to a judgment debtor . . . under [a] policy insuring a judgment debtor against liability for loss or damage on account of bodily injury . . . or on account of damage to property, in satisfaction of a judgment covered by such policy . . . ." An insurer may avail itself of any defense which it would have against the insured. *Lombardi* v. *Lumbermens Mut. Casualty Co.,* 361 Mass. 310, 311 (1972). Where the policy provides no coverage, an insurer has no obligation to pay a judgment against its insured. *Connolly* v. *Bolster,* 187 Mass. 266, 270-271 (1905).

The critical question is whether the final judgment against Hub is one covered by the defendants' policies. All the policies in issue are policies for comprehensive general liability

insurance containing identical coverage provisions. Section II of the policies extended liability coverage to Hub, providing that the defendants would pay on Hub's behalf "all sums which the insured shall become legally obligated to pay as damages because of (A) bodily injury or (B) property damage to which this insurance applies, caused by an occurrence . . . ." Thus, the defendants' obligation to indemnify the insured Hub is contingent on the plaintiffs having suffered bodily injury or property damage caused by an "occurrence." The definitional section applicable to Section II defines "occurrence" as "an accident . . . which results in bodily injury or property damage neither expected or intended from the standpoint of the insured."

The basis of the plaintiffs' claims against Hub were allegations of disparate treatment. The MCAD commissioner found that Hub discriminated against the plaintiffs in denying them equal pay, overtime opportunities, and promotions on the basis of their gender. Additionally, the MCAD found that Hub retaliated against the plaintiffs for filing their discrimination complaints. Based on these findings, the commissioner awarded the plaintiffs damages for lost wages and emotional distress.

General Laws c. 175, § 47, Sixth, provides that "no company may insure any person against legal liability for causing injury, other than bodily injury, by his deliberate or intentional crime or wrongdoing." Coverage is barred under this section only "if an intentionally committed, wrongful act was also done deliberately or intentionally, in the sense that the actor knew that the act was wrongful." *Andover Newton Theological Sch., Inc. v. Continental Casualty Co.*, 409 Mass. 350, 352 (1991). However, the policies must be determined to provide coverage before a court need determine whether the coverage is barred by § 47, Sixth. We now turn to whether the policies in question cover the plaintiffs' claims.

The defendants contend that the policies in question did not cover any of the damages awarded because the discriminatory acts of Hub do not constitute an occurrence, as that

term is defined by the policies, because Hub intended or expected to deprive the plaintiffs of their wages and cause them emotional distress.[3] The policies in issue defined "occurrence" as including an "accident . . . which results in bodily injury or property damage *neither expected or intended from the standpoint of the insured*" (emphasis added).

We have stated that "[g]enerally, an injury 'which ensues from the volitional act of an insured is still an 'accident' within the meaning of an insurance policy if the insured does not specifically intend to cause the resulting harm or is not substantially certain that such harm will occur.' " *Worcester Ins. Co.* v. *Fells Acres Day Sch., Inc.*, 408 Mass. 393, 399 (1990), quoting *Quincy Mut. Fire Ins. Co.* v. *Abernathy*, 393 Mass. 81, 84 (1984). However, "[t]he insured need not intend to cause the exact extent of the injury which results, in order for the exclusion to apply." *Newton* v. *Krasnigor*, 404 Mass. 682, 685 (1989). The resulting harm "concerns the type of harm inflicted . . . and not the extent of the harm actually sustained." *Id.* at 686.

1. *Damages for lost wages resulting from discrimination.* As noted above, the MCAD commissioner awarded the plaintiffs damages for lost wages, part of which were to compensate for Hub's discrimination in terms of pay, overtime, and promotions. We now decide whether Hub intentionally caused or was substantially certain to cause the plaintiffs to lose wages. The plaintiffs argue that Hub negligently or recklessly discriminated against them. They further argue that, if we conclude that Hub intentionally discriminated against them, that there is no evidence that Hub intended the resulting harm.

---

[3]The defendants also contend that there is no coverage because the damages awarded are not because of bodily injury or property damage, as defined in the policies. Furthermore, they argue that the plaintiffs' claims are barred by the policies' employee exclusion, which excludes from coverage bodily injury to an employee arising out of the course of employment. In addition, they argue that the judgment is not enforceable against them because they have been prejudiced by the late receipt of the plaintiffs' claim and by Hub's failure to cooperate. Because we decide in favor of the defendants on other grounds, we do not address these contentions.

The plaintiffs' first argument ignores the MCAD's finding that Hub intentionally discriminated against them on the basis of their sex. The MCAD order, which is the basis of the final judgment that the plaintiffs are seeking to enforce, makes clear that Hub's liability is based solely on its discriminatory disparate treatment, which entails a discriminatory intent. *Brunner* v. *Stone & Webster Eng'g Corp.*, 413 Mass. 698, 699 (1992). The plaintiffs' second argument also fails. The findings of the MCAD demonstrate that Hub discriminated against the plaintiffs knowing that the amount the plaintiffs received in wages would be adversely affected. We hold that Hub's acts of discrimination against the plaintiffs, in denying equal pay, overtime work, and promotions, imply an intent to cause loss of wages. Hub's discrimination resulting in lost wages to the plaintiffs was not a covered "occurrence," as defined by the policies in question.

2. *Damages for lost wages resulting from retaliation.* The MCAD commissioner also awarded damages for lost wages resulting from Hub's retaliation in permanently laying off the plaintiffs. The MCAD commissioner found that Hub intentionally failed to recall the plaintiffs after they were laid off in retaliation for filing complaints with the MCAD. As a matter of law, a retaliatory discharge implies an intent to cause loss of wages. The award for lost wages was not covered by the policies.

3. *Damages for emotional distress resulting from retaliation.* The MCAD also awarded damages to compensate the plaintiffs for the emotional harm they suffered due to Hub's retaliation against them for filing their complaints. The MCAD found that Taylor became angry when the plaintiffs complained about the discrimination and that he immediately reassigned the plaintiffs to ignoble and isolated tasks in the company in order to retaliate. Furthermore, the MCAD found that these acts of retaliation caused the plaintiffs to feel angry, frustrated, humiliated, and embarrassed. In order for the emotional harm suffered by the plaintiffs resulting from the acts of retaliation of Hub to be deemed accidental, Hub must not have intended to cause the harm nor have

been substantially certain that such harm would occur. The judge concluded that Hub either intended or was substantially certain that the plaintiffs would suffer emotional harm when it reassigned them to menial positions and failed to recall them. We agree. The MCAD's findings make apparent that Hub at least knew with substantial certainty that the plaintiffs would suffer emotional harm when it retaliated against them for filing their complaints.

4. *Conclusion.* Because Hub, in discriminating against the plaintiffs because of their gender and retaliating against them because of their complaints, intended or was substantially certain that the plaintiffs would suffer the types of harm they did suffer, the plaintiffs' claims do not constitute an "occurrence" under the policies in question. The plaintiffs' arguments that coverage exists under other provisions of the policies are unpersuasive.[4] The judgment of the Superior Court denying the plaintiffs' motion for summary judgment and allowing the defendants' motion for summary judgment is affirmed.

*Judgment affirmed.*

---

[4] These arguments do not warrant extended discussion since they require an imaginative reading of the policies and a disregard of the facts and applicable law. The plaintiffs contend that certain language extending coverage to defamation and violations of the right to privacy provides coverage for their claims. It is entirely clear from the MCAD's order that Hub's liability is based solely on discrimination and not on defamation or invasion of privacy. Likewise, the plaintiffs' argument that Hub negligently allowed its employee Taylor to discriminate against them fails to comport with the record. The MCAD order solely imposed liability against Hub derivatively for Taylor's actions. Incredibly, the plaintiffs also argue that coverage is provided by certain policy language extending bodily injury coverage to intentional acts in reasonable defense of persons or property. Assuming that the plaintiffs were injured bodily and that Hub discriminated against the plaintiffs in order to protect male employees, liability for sex discrimination can never be held to be reasonable. Another argument wrongly assumes that coverage is bestowed if the claims are not barred by the policies' employee exclusion. The plaintiffs' other arguments are contingent on their claims being "occurrence[s]," and need not be discussed.