**NORTHLAND CASUALTY COMPANY,**
Plaintiff/Counter–Defendant,

v.

**HBE CORPORATION, d/b/a Adam's Mark Hotel, Fred S. Kummer, Defendants/Counter–Plaintiffs.**

No. 6:00–cv–532–Orl–31DAB.

United States District Court,
M.D. Florida,
Orlando Division.

Sept. 13, 2001.

---

**16.** In view of this Memorandum Opinion, the additional Defendant is due to be Dismissed.

Ronald L. Kammer, Hinshaw & Culbertson, Miami, FL, for Plaintiff.

Duncan B. Dowling, III, Rogers, Dowling, Orlando, FL, Michael M. Baylson, Duane, Morris & Heckscher, Philadelphia, PA, for Defendants.

### ORDER

PRESNELL, District Judge.

This is a declaratory judgment action in which the parties seek a declaration as to their rights and obligations under an insurance policy. This matter is now before the Court on the following matters: (1) HBE's Motion for Summary Judgment (Doc. No. 43, filed December 22, 2000); (2) Northland's Motion for Summary Judgment (Doc. No. 45, filed December 28, 2000); (3) Memorandum by HBE in Opposition to Northland's Motion for Summary Judgment (Doc. No. 61, filed February 9, 2001); (4) Response by Northland to HBE's Motion for Summary Judgment (Doc. 62, filed February 9, 2001); (5) Notice of Filing Supplemental Authority by Northland (Doc. No. 70, filed April 9, 2001); (6) HBE's Response to Court's Order (Doc. No. 81, filed June 14, 2001); (7) Northland's Response to Court's Order (Doc. No. 86, filed July 2, 2001); (8) Northland's Opposition to HBE's Motion for Ju-

dicial Notice (Doc. No. 84, filed June 29, 2001); (9) HBE's Response to Northland's Opposition to Motion for Judicial Notice (Doc. No. 88, filed July 12, 2001); and (10) Notice of Filing Supplemental Authority by Northland (Doc. No. 92, filed August 7, 2001).

## I. BACKGROUND

### A. *The Parties*

Defendant/Counter–Plaintiff HBE Corporation ("HBE"), a Delaware corporation with its principal place of business in Missouri, operates a chain of Adam's Mark Hotels throughout the United States. Defendant/Counter–Plaintiff Fred S. Kummer ("Kummer") operates HBE's Hotel and Resorts Division and owns a controlling interest in the stock of the privately-held HBE. Plaintiff/Counter–Defendant Northland Casualty Company ("Northland") is a Minnesota corporation with its principal place of business also in Minnesota. Northland issued general liability policies to HBE. These policies, which are the focus of this litigation, were applied for, negotiated, and issued to HBE in Missouri.[1]

### B. *The Insurance Policy*

The policy contains the following relevant provisions:

SECTION II—COMPREHENSIVE GENERAL LIABILITY

*INSURING AGREEMENTS*

A—COMPREHENSIVE GENERAL LIABILITY: Underwriters hereby agree, subject to the limitations, terms and conditions hereunder mentioned, to indemnify the Assured for all sums, including expenses, all as more fully defined by the term ultimate net loss, which the Assured shall become legally

---

**1.** For ease of reference, the policies will hereafter be collectively referred to as "the policy" when discussing terms and conditions common to all policies.

obligated to pay as damages imposed by law because of bodily injury, property damage, personal injury, advertising injury, products liability and[/]or completed operations, host/liquor liability or incidental malpractice which result from an occurrence and which occur during the policy period.

. . .

*DEFINITIONS*

1. PERSONAL INJURY—The term "personal injury" wherever used herein, shall mean Bodily Injury, Mental Anguish, Shock, Sickness, Disease, Disability, False Arrest, False Imprisonment, Wrongful Eviction, Detention, Malicious Prosecution, *Discrimination,* Humiliation, Libel, Slander or Defamation of Character, Invasion of Rights of Privacy, infringement of copyright or of property, erroneous service of Civil Papers, *Violation of Civil Rights,* Assault and Battery, Disparagement of Property and Advertising Injury. (emphasis added)

. . .

9. OCCURRENCE—The term "occurrence" wherever used herein shall mean an accident or a happening or event or a continuous or repeated exposure to conditions which result in personal injury or damage to property during the policy period. All personal injuries to one or more persons and/or property damage arising out of an accident or a happening or event or a continuous or repeated exposure to conditions shall be deemed one occurrence.

. . .

17. ULTIMATE NET LOSS . . . For Section II, the term "ultimate net loss" shall mean the total sum which the Assured becomes obligated to pay by reason of personal injury or property damage claims, either through adjudication or compromise, after making proper deductions for all recoveries and salvages.

"Ultimate net loss" shall also include . . . law costs, premiums on attachment of appeal bonds, expenses for lawyers and investigators and other persons for litigation, settlement, adjustment and investigation of claims or suits which are paid as a consequence of any occurrence covered hereunder. . . .

. . .

*EXCLUSIONS APPLICABLE TO SECTION II*

THIS SECTION DOES NOT APPLY— to any Claim for damages, whether direct or consequential, or for any cause of action which is covered under any other section of this policy or

(a) to personal injury or property damage which the Assured intended or expected or reasonably could have expected but this exclusion shall not apply to personal injury resulting from the use of reasonable force to protect persons or property.

C. *Procedural History*

On April 25, 2000, Northland filed a Complaint for Declaratory Relief pursuant to 28 U.S.C. §§ 2201–2202. Specifically, Northland asks this Court to declare that Northland is not required to indemnify HBE for expenses incurred with respect to a Florida lawsuit entitled *Gilliam v. HBE Corp.* and two other related lawsuits brought against HBE by the United States Department of Justice and the Attorney General of Florida (the *"Gilliam* lawsuits"). In the seven count Complaint, Northland seeks a declaration that these lawsuits are not covered under the policy because (1) there has been no occurrence; (2) the *"intended or expected"* exclusion applies; (3) public policy prohibits coverage for acts of intentional racial discrimi-

nation; and (4) there is no coverage for injunctive relief. Alternatively, in the event there is a finding of coverage, Northland seeks a declaration that the acts alleged in the lawsuits constitute only one occurrence. Northland further seeks restitution and damages for unjust enrichment for payments made to HBE in connection with the defense of the *Gilliam* lawsuits.[2]

On July 7, 2000, HBE filed an Answer, Affirmative Defenses, and Counterclaim against Northland. In its Counterclaim, HBE seeks declaratory relief and damages for breach of contract against Northland for failure to provide coverage as provided in the policy for the *Gilliam* lawsuits, as well as two other lawsuits filed outside the state of Florida (collectively referred to as "the underlying lawsuits").

Northland and HBE now move for summary judgment on their claims. HBE seeks summary judgment on Counts I V of Northland's Complaint and on its own Counterclaim. By its motion, HBE asks the Court to order Northland to indemnify HBE on the underlying lawsuits. Further, HBE asks the Court to grant summary judgment on HBE's claim that Northlands' refusal to continue indemnification payments it made to HBE for defense costs incurred in the *Gilliam* lawsuits constitutes breach of the insurance agreement. Conversely, Northland's motion for summary judgment seeks a declaration that it has no duty to indemnify HBE in any of the underlying lawsuits and that Northland is entitled to reimbursement of defense costs already paid to HBE under the policy.

---

**2.** Northland paid HBE in excess of $500,000 for expenses for lawyers, investigators, and other costs incurred as a result of the *Gilliam* lawsuits.

### D. *The Underlying Lawsuits*

There are five complaints which are the subject of Northland's Complaint and HBE's Counterclaim. The Court will briefly summarize each case below.

#### (i) *Gilliam v. HBE*

On May 20, 1999, Dante Gilliam and four other plaintiffs filed a complaint for declaratory and injunctive relief, and damages, against HBE in the United States District Court for the Middle District of Florida.[3] The lawsuit seeks redress for alleged acts of discrimination that occurred in April of 1999 at the Adam's Mark Hotel in Daytona Beach, Florida during an event known as the Black College Reunion ("BCR"). The complaint asserts alleged violations of Title II of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981 and 2000a *et seq.*, as well as violations of the Florida Civil Rights Act, Chapters 509 and 760, Florida Statutes. The complaint alleges that HBE subjected the plaintiffs to various forms of discriminatory treatment based on their race, including

(a) requiring black guests, but not white guests, to pre-pay their hotel rooms in full; (b) requiring black guests, but not white guests, to wear neon orange non-detachable plastic wristbands; (c) subjecting black guests, but not white guests, to hostile and threatening security measures; (d) charging black guests higher rates for rooms than were charged to white guests; (e) charging black guests higher deposits for rooms and other services than were charged to white guests; (f) limiting the types of rooms that were available to black guests, but not to white guests; (g) de-

---

**3.** The complaint has since been twice amended. All references to the complaint refer to the Second Amended Complaint in *Gilliam v. HBE*, 6:99–CV–596–ORL–22C (M.D. Fla., Orlando Division).

nying or providing substandard service and amenities to black guests, but not to white guests; (h) limiting the number of persons who could enter the hotel's premises to visit black guests, but not white guests; and (i) requiring black guests, but not white guests, to vacate their rooms and check out of the hotel earlier in the day than normally required.

(Gilliam Compl. at ¶ 3). According to the *Gilliam* plaintiffs, these actions "were intended to, and did in fact, deny them the right to contract for goods, services and public accommodations on the same terms as white persons" and "were intended to, and did in fact, deny them the same right to the full and equal benefit of all laws" as is enjoyed by white persons. (*Id.* at ¶¶ 4–5).

The complaint further alleges that HBE "has authorized its employees to discriminate against black persons in the manner described in [the] complaint" and "has demonstrated callous and reckless disregard" for the federally protected rights of the plaintiffs. (*Id.* at ¶ 9). Additionally, the complaint alleges that "[t]he discriminatory policies and practices of [HBE] are based on an invidious racial animus toward black guests and their black visitors during 1999 BCR and are intended to discourage black persons from seeking accommodations at the hotel during BCR." (*Id.* at ¶ 143). The discriminatory practices and policies cited in the complaint are further alleged to have been "carried out under the direction, and with full knowledge and consent, of the company's highest officials" by agents and employees acting within the scope of their employment. (*Id.* at ¶ 145). Plaintiffs claim that the discriminatory policies are effectuated by means of a "centralized decision-making process" which reflects "the racially discriminatory views of current management." (*Id.* at ¶ 147). Plaintiffs also claim that the "discriminatory policies and practices of [HBE] have

been maintained intentionally, maliciously and with reckless disregard" of their federally protected rights. (*Id.* at ¶ 148).

The *Gilliam* lawsuit is currently pending trial in the Middle District of Florida.

### (ii) *State of Florida's Intervenor's Complaint*

On December 13, 1999, the Attorney General of Florida moved to intervene in the *Gilliam* lawsuit. The Attorney General claims that the facts alleged in the *Gilliam* Complaint demonstrate a violation of the Florida Deceptive and Unfair Trade Practices Act, Chapter 501, Part II, Florida Statutes (1999). The complaint alleges, *inter alia,* that the differences in treatment afforded to African–American guests at the Daytona Beach Adam's Mark Resort "were effectuated intentionally by [HBE and Kummer] because of the race or color of the consumers." (St. of Fla. Compl. in Int. at ¶ 13). The complaint further alleges that HBE "developed and planned" these racially discriminatory policies "well in advance of BCR." (*Id.*) Additionally, the complaint alleges that HBE and Kummer "knew or should have known" that the practices alleged to be discriminatory were unfair, deceptive, or unconscionable. (*Id.* at ¶ 17).

United States District Judge Anne C. Conway granted the motion to intervene and subsequently severed the Attorney General's claims for trial upon concluding that those claims should be tried first, followed by the *Gilliam* claims. The trial of the state of Florida's suit is scheduled to commence in November of 2001.

### (iii) *United States' Complaint for Injunctive Relief*

On December 27, 1999, the United States also filed a complaint in the Middle District of Florida against HBE for injunctive relief pursuant to Title II of the

Civil Rights Act of 1964, 42 U.S.C. §§ 2000a *et seq.*[4] In its complaint, the Government alleges that HBE, "acting through its officers, employees, and agents, has engaged in policies and practices which deny to persons, on account of race or color, the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of its hotels and the restaurants, bars, lounges, or clubs located therein." (U.S. Comp. for Inj. Rel. at ¶ 8). The complaint, which encompasses discriminatory practices at Adam's Mark Hotels not only in Daytona Beach but elsewhere in the country, is silent as to whether the alleged discriminatory polices and practices were the result of intentional, reckless, or negligent conduct by HBE.

The United States' injunctive suit eventually settled. A copy of the settlement agreement has not been made a part of the record, nor have the parties referred to the terms of the settlement agreement in their motions or briefs.

### (iv) *Stephens v. HBE*

On September 10, 1999, Matthew Stephens and eight other named plaintiffs filed a class action complaint against HBE in the United States District Court for the Eastern District of Pennsylvania alleging violations of 42 U.S.C. §§ 1981, 1982, 1985, 1986 and 2000a *et seq.*[5] The *Stephens* suit alleges that among the questions of law and fact common to the class members is whether "[HBE's and Kummer's] racially discriminatory and harassing policies and practices continued to cause a disparate impact and/or treatment of members of the Class." (Stephens Compl. at ¶ 9(iii)). In *Stephens,* the allegations largely focus

on claims that HBE's cancellation of "Motown Monday" at the Adam's Mark Hotel in Philadelphia, Pennsylvania was a "clear signal" that HBE wanted to discourage the patronage of African–Americans. (*Id.* at ¶ 20). According to Stephens and the other plaintiffs, numerous changes at the hotel created a racially hostile environment, including that the music played in the hotel's nightclub changed from what the complaint refers to as "African–American music" and became "more directed towards white people." (*Id.* at ¶¶ 20–21). At least one plaintiff felt as if "he was being chased out when the [disc jockeys] played rock-and-roll and country music" instead of Motown. (*Id.* at 21). The plaintiffs claimed that other practices of the hotel were discriminatory as well, including the hotel's policy of charging a cover on nights that had a predominately African American crowd but not on nights that drew a predominately white crowd. The complaint also claims that the hotel applied a more stringent dress code policy against African–Americans and would require African–American patrons to present identification to gain admittance to the nightclub more frequently than was required of white patrons.

At this time, the claims alleged in the *Stephens* case remain pending.

### (v) *Hendrix–Frye v. HBE*

On September 14, 1999, Helena Hendrix–Frye and Oscar McPherson filed a complaint against HBE in the General Court of Justice, Superior Court Division, in the state of North Carolina.[6] The *Hendrix–Frye* suit alleges violations of 42 U.S.C. § 1981 based on the actions of a

---

**4.** *United States v. HBE,* 99–CV–1604–ORL–22C (M.D. Fla., Orlando Division).

**5.** The *Stephens* complaint has been subsequently amended. All references to the complaint refer to the Second Amended Class

Action Complaint in *Stephens v. Seven Seventeen HB Philadelphia Corp., No. 2 t/a Adam's Mark Hotel,* 99–CV–4541 (E.D.Pa.).

**6.** *Hendrix–Frye v. HBE,* 99–CVS–6568 (filed in Forsyth County, North Carolina).

waitress who waited on the plaintiffs at the Adam's Mark Winston Plaza Hotel in the City of Winston–Salem, North Carolina. According to the African–American plaintiffs, the waitress, "while acting in the course and scope of her employment, within her actual authority and in furtherance of defendant's business," rendered inferior service to the plaintiffs because of their race. The complaint further alleges that HBE ratified the waitress's conduct and "willfully and wantonly and maliciously" denied plaintiffs of their rights as American citizens. The complaint makes no mention of a corporate policy of discrimination.

 Like the United States' injunctive suit, the *Hendrix–Frye* lawsuit also settled before trial. Here, again, however, the record does not contain a copy of the settlement agreement or any discussion of its terms.[7]

### E. *Applicable Law*

Previously, under this Court's prior order entered May 24, 2001, the Court concluded that the laws of the states of Florida, North Carolina, and Pennsylvania, respectively, govern the disposition of issues relating to the construction and interpretation of the various insurance policies. The Court further concluded, with regard to determining the number of occurrences under the policy, that Missouri law controlled. *See Northland Casualty Co. v. HBE Corp.*, 145 F.Supp.2d 1310 (M.D.Fla.2001). The parties agree that the laws of Florida, North Carolina, and

Pennsylvania are virtually identical with respect to the rules of construction and interpretation of insurance policies. The parties adamantly disagree, however, with regard to whether all three states share the same public policy against insuring acts of intentional discrimination.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate only in circumstances where "the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party." *Id.* The moving party bears the burden of proving that no genuine issue of material fact exists. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether the moving party has satisfied the burden, the Court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.

In a declaratory judgment action, "[i]f the allegations in the complaint alleging a

---

7. HBE asks this Court to take judicial notice of the findings and recommendations of the magistrate judge in *Hendrix–Frye* to support its position that the complaint alleges a theory of vicarious liability. Northland objects to the Court taking judicial notice of the magistrate's report on the ground that the matters described in the report are in dispute. Alternatively, in the event the Court does take judicial notice of the magistrate's report,

Northland requests that this Court also take judicial notice of a decision of the Eighth Circuit Court of Appeals and of the District Court for the Eastern District of Missouri as evidence of HBE's policy of intentional racial discrimination. The Court concludes that neither the report of the magistrate judge nor the judicial opinions are appropriate matters for judicial notice; therefore, those matters played no part in this Court's findings.

claim against the insured either are acts not covered by the policy or are excluded from the policy's coverage, the insurer is not obligated to defend or indemnify the insured." *Transcontinental Ins. Co. v. Ice Sys. of Am., Inc.*, 847 F.Supp. 947, 949–50 (M.D.Fla.1994). Summary judgment is appropriate in declaratory judgment actions seeking a declaration of coverage when the insurer's duty, if any, rests solely on the applicability of the insurance policy, the construction and effect of which is a matter of law. *Talat Enter., Inc. v. Aetna Life & Cas.*, 952 F.Supp. 773 (M.D.Fla. 1996).

## III. LAW OF INSURANCE

### A. *General Principles*

■ It is a cardinal principle of insurance law that where the provisions of an insurance policy are clear and unambiguous, the terms of the policy will be accorded their plain meaning and enforced as written. *See Harrison v. Tobacco Transport, Inc.*, 139 N.C.App. 561, 533 S.E.2d 871, 875 (N.C.App.2000); *Insurance Co. of Evanston v. Bowers*, 758 A.2d 213, 220 (Pa.Super.2000); *Rigel v. National Cas. Co.*, 76 So.2d 285, 286 (Fla.1954). It is equally well-settled that where a policy is ambiguous, the court will construe the policy in favor of coverage and against the insurer who drafted the policy. *See id.; see also North Carolina Farm Bureau Mut. Ins. Co. v. Stox*, 330 N.C. 697, 412 S.E.2d 318, 325 (1992). When construing the provisions of an insurance policy, the provisions are not to be interpreted in isolation but in harmony with the rest of the contract. *See DeMent v. Nationwide Mut. Ins. Co.*, 142 N.C.App. 598, 544 S.E.2d 797, 799–800 (2001); *Riccio v. American Republic Ins. Co.*, 550 Pa. 254, 705 A.2d 422 (1997); *Excelsior Ins. Co. v. Pomona Park Bar & Package Store*, 369 So.2d 938 (Fla.1979). Additionally, the terms are construed to give the broadest possible coverage to the insured. *See Un-*

*ion Am. Ins. Co. v. Maynard*, 752 So.2d 1266, 1268 (Fla.Dist.Ct.App.2000); *Stox*, 412 S.E.2d at 321.

■ In an action to determine insurance coverage, the insured has the "burden of proving that a claim against it is covered by the insurance policy." *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1516 (11th Cir.1997). The insurer has the burden of proving an exclusion to coverage. *Id.*

### B. *Occurrence*

■ In the instant case, the policy defines "occurrence" as "an accident or a happening or event." (Policy, Section II, Definition 9). Courts generally construe the definition of occurrence broadly to include both "accidental events" and "injuries or damage neither expected or intended from the standpoint of the insured." *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So.2d 1072, 1076 (Fla.1998); *see also Holz–Her U.S. Inc. v. U.S. Fidelity & Guar. Co.*, 141 N.C.App. 127, 539 S.E.2d 348, 350 (2000); *State Farm Mut. Auto. Ins. Co. v. Martin*, 442 Pa.Super. 442, 660 A.2d 66, 67–68 (1995). In the context of discrimination, the greater weight of authority holds that allegations of intentional discrimination do not constitute an occurrence for the purpose of insurance coverage. *See Oak Ridge Park, Inc. v. Scottsdale Ins. Co.*, 1999 WL 731417, *4 (E.D.La. Sept.17, 1999), *aff'd*, 234 F.3d 706 (5th Cir.2000) (housing discrimination); *Travelers Cas. & Sur. Co. of Ill. v. Rage Admin. & Mktg. Serv., Inc.*, 42 F.Supp.2d 1159, 1167 (D.Kan.1999) (racial discrimination); *Farmer City Cmty. Health Found., Inc. v. Cincinnati Ins. Co.*, 1994 WL 394914, *3–4 (C.D. Ill. Jul. 28, 1994) (racial discrimination); *Brooklyn Law Sch. v. Aetna Cas. & Sur. Co.*, 661 F.Supp. 445, 452 (E.D.N.Y. 1987), *aff'd*, 849 F.2d 788 (2d Cir.1988) (racial discrimination); *Folsom Invest-*

*ments, Inc. v. American Motorists Ins. Co.*, 26 S.W.3d 556, 561 (Tex.Ct.App.2000) (sexual harassment); *Rideout v. Crum & Forster Commercial Ins.*, 417 Mass. 757, 633 N.E.2d 376 (1994) (sex discrimination); *Industrial Indem. Co. v. Pacific Maritime Ass'n*, 97 Or.App. 676, 777 P.2d 1385, 1388 (1989). At least one Florida court has reached the same conclusion. *See State Farm Fire & Cas. Co. v. Compupay, Inc.*, 654 So.2d 944, 946–47 (Fla.Dist.Ct.App. 1995) (finding that allegations of sexual harassment and discrimination directed toward the injured person are intentional acts that do not constitute an occurrence under an insurance policy).

## C. *Exclusions*

■ When an insurer relies on an exclusion to deny coverage, it has the burden of demonstrating that the allegations of the complaint are cast solely and entirely within the policy exclusion and are subject to no other reasonable interpretation. *Board of Pub. Ed. of Sch. Dist. of Pittsburgh v. National Union Fire Ins. Co. of Pittsburgh*, 709 A.2d 910, 913 (Pa.Super.Ct.1998); *Westmoreland v. Lumbermens Mut. Cas. Co.*, 704 So.2d 176, 179 (Fla.Dist.Ct.App.1997); *Houpe v. City of Statesville*, 128 N.C.App. 334, 497 S.E.2d 82, 88 (1988). Exclusionary clauses are generally disfavored. Consequently, courts construe any ambiguity in exclusionary language strictly against the insurer. *Id.*

■ In this case, the insurance policy contains what is commonly referred to as an "intended or expected" exclusion. This type of exclusion excludes from coverage all damages and injuries which the insured intended as a consequence of his or her actions. *See ABC Distrib., Inc. v. Lumbermens Mut. Ins. Co.*, 646 F.2d 207, 209

(5th Cir.1981) (applying Florida law).[8] Florida, North Carolina, and Pennsylvania use the same test for application of the intended or expected exclusion. Under this test, the exclusion applies to bar coverage where both the act and the resultant harm are intended. *See Allstate Ins. Co. v. Myers*, 951 F.Supp. 1014, 1017 (M.D.Fla. 1996); *North Carolina Farm Bureau Mut. Ins. Co. v. Stox*, 330 N.C. 697, 412 S.E.2d 318 (1992); *United Servs. Auto Ass'n v. Elitzky*, 358 Pa.Super. 362, 517 A.2d 982 (1986). Proof of "subjective or specific intent to harm is not required when a reasonable person would know that the harm would likely occur from the intentional acts." *Allstate Ins. Co. v. Myers*, 951 F.Supp. at 1017. Additionally, many courts have held that the intent to harm may be inferred where the underlying theories of liability allege acts of intentional discrimination. *See, e.g., Vaughner v. Pulito*, 804 F.2d 873, 877 (5th Cir.1986); *Travelers Cas. & Sur. Co. of Ill. v. Rage Admin. & Mktg. Serv., Inc.*, 42 F.Supp.2d at 1167; *Jourdain v. Millet*, 1997 WL 627590, *2 (E.D.La. Oct.9, 1997), *aff'd*, 163 F.3d 1355 (5th Cir.1998); *Farmer City Cmty. Health Found., Inc. v. Cincinnati Ins. Co.*, 1994 WL 394914, at 3–4; *State Farm Fire & Cas. Co. v. Hiermer*, 720 F.Supp. 1310, 1314–15 (S.D.Ohio 1988); *Groshong v. Mutual of Enumclaw Ins. Co.*, 143 Or.App. 450, 923 P.2d 1280, 1285 (1996), *aff'd*, 329 Or. 303, 985 P.2d 1284 (1999).

## D. *Duty to Indemnify*

The policy at issue in this litigation provides that Northland has the duty to indemnify HBE for sums that HBE becomes legally obligated to pay, by adjudication or compromise, because of personal injury which results from an occurrence during

---

8. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit before October 1, 1981.

the policy period. Northland's duty to indemnify includes reimbursement of expenses incurred by HBE in the defense of covered claims. The policy does not, however, obligate Northland to defend HBE for claims covered by the policy.

■■■ The duty to indemnify is separate and distinct from the duty to defend. *Western World Ins. Co., Inc. v. Cigna Corp.*, 718 F.Supp. 1518, 1520 (S.D.Fla. 1989); *General Accident Ins. Co. of Am. v. Allen*, 547 Pa. 693, 692 A.2d 1089, 1095 (1997); *Brown v. Lumbermens Mut. Cas. Co.*, 90 N.C.App. 464, 369 S.E.2d 367, 373 (1988). The duty to defend, which is broader than the duty to indemnify, "depends solely on the allegations in the complaint filed against the insured." *Tropical Park, Inc. v. United States Fid. & Guar. Co.*, 357 So.2d 253, 256 (Fla.Dist.Ct.App. 1978). Thus, when construing the duty to defend, the court considers whether the allegations of the complaint implicate potential coverage. *Id.* "If the complaint alleges facts partially within and partially outside the scope of coverage, the insurer is obligated to defend the entire suit." *Id.* This is so, even though the underlying action may eventually produce a result which in fact does not trigger a duty to indemnify. *Id.* "Consequently, an insurer may be required to defend a suit even if the later true facts show that there is no coverage." *Trizec Prop., Inc. v. Biltmore Const. Co., Inc.*, 767 F.2d 810, 812 (11th Cir.1985).

■■■ In contrast to the duty to defend, which is determined by looking to the allegations of a complaint, the duty to indemnify is dependent upon the entry of a final judgment, settlement, or a final resolution of the underlying claims by some other means. *See Travelers Ins. Co. v. Waltham Indus. Lab. Corp.*, 883 F.2d 1092, 1099 (1st Cir.1989); *Beaudette, Inc. v. Sentry Ins.*, 94 F.Supp.2d 77, 100 (D.Mass.1999). Unless the insured can demonstrate that it suffered a covered loss under the policy, the insurer has no duty to indemnify whatsoever. *Celotex Corp. v. AIU Ins. Co., (In re Celotex Corp.)*, 152 B.R. 661 (Bankr.M.D.Fla.1993). Thus, "whereas the duty to defend is measured by the allegations of the underlying complaint, the duty to indemnify is measured by the facts as they unfold at trial or are inherent in the settlement agreement." *Id.*

■■■ Because an insurer's duty to indemnify is dependent on the outcome of a case, any declaration as to the duty to indemnify is premature unless there has been a resolution of the underlying claim. *Bankwest v. Fidelity & Deposit Co. of Md.*, 63 F.3d 974, 981–82 (10th Cir.1995); *Nationwide Ins. v. Zavalis*, 52 F.3d 689, 693 (7th Cir.1995); *Sphere Drake, P.L.C. v. 101 Variety, Inc.*, 35 F.Supp.2d 421, 430–31 (E.D.Pa.1999); *Carpenter, Weir & Myers*, 1998 WL 976309, *12 (D.Kan. Oct.30, 1998); *Allstate Indem. Co. v. Lewis*, 985 F.Supp. 1341, 1349 (M.D.Ala.1997). The only exception to this general principle is if the court can determine that the allegations in the complaint could under no circumstances lead to a result which would trigger the duty to indemnify. *Sphere Drake*, 35 F.Supp.2d at 430–31; *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81 (Tex.1997). In such a situation, the court could adequately assess the duty to indemnify prior to a conclusion on the merits of the underlying litigation.

E. *Public Policy Considerations*

■■■ As a federal court sitting in diversity, this Court must apply the choice of law rules of the forum state—in this case, the state of Florida. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under Florida's choice of law rules, a court may not apply the laws of another state if

to do so would be repugnant to Florida's public policy. *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So.2d 306, 311 (Fla.2000). The Supreme Court of Florida has enunciated a strong public policy against allowing insurance coverage for intentional discrimination. *Ranger Ins. Co. v. Bal Harbour Club, Inc.*, 549 So.2d 1005, 1007–08 (Fla.1989). Florida public policy does not, however, preclude insurance coverage for unintentional discrimination. *Id.* at 1006 ("Unintentional discrimination is clearly a legitimate business risk and as such is insurable.").

█ Unlike Florida, North Carolina and Pennsylvania have not clearly announced that insurance coverage for intentional discrimination violates public policy. These states do, however, generally bar insurance coverage on public policy grounds for intentional injuries committed by an insured, where the insured intended the act and the resultant harm flowing from the act. *See, e.g., State Auto Ins. Companies v. McClamroch*, 129 N.C.App. 214, 497 S.E.2d 439, 442–43 (1998).

█ Despite their public policy pronouncements barring insurance coverage for intentional conduct, Florida, North Carolina, and Pennsylvania do not preclude insurance coverage when the insured is not personally at fault, but is merely vicariously liable for another's wrong. *See U.S. Concrete Pipe Co. v. Bould*, 437 So.2d 1061, 1063 (Fla.1983); *Butterfield v. Giuntoli*, 448 Pa.Super. 1, 670 A.2d 646, 655 (1995); *MGM Transport Corp. v. Cain*, 128 N.C.App. 428, 496 S.E.2d 822, 824 (1998). Therefore, public policy is generally only implicated when the insured seeks indemnification for injuries that it intended to cause. Fortunately, in most cases, the terms and exclusions of an insurance policy will remove a case involving allegations of intentional conduct from coverage, without resort to public policy considerations and the attendant issues of comity. *See* 7 Lee R. Russ & Thomas F. Segalla, 7 *Couch on Insurance* 3d § 101:22 (2000).

## IV. ANALYSIS

### A. *Coverage of the Underlying Lawsuits*

At the heart of this coverage dispute is to what extent, if any, the insurance policies issued to HBE cover claims of intentional racial discrimination. Northland's argument is three-fold. First, Northland contends that intentional discrimination does not constitute an "occurrence" because it is not an accidental event. Second, Northland argues that intentional discrimination is specifically excluded from coverage under the policy's "intended or expected" exclusion. Third, Northland argues that, even if the policy could be construed to provide coverage for intentional discrimination, such coverage would nonetheless violate Florida's public policy. Northland concedes, however, that if the allegations of the underlying lawsuits allege theories of unintentional discrimination, those claims may trigger Northland's duty to indemnify HBE.[9] Thus, the crux of Northland's argument is that *all* of the allegations of the underlying actions are based on intentional conduct by HBE and Kummer.

█ Initially, the Court concludes that claims of intentional racial discrimination are not covered under the Northland policy as they do not constitute an accidental "occurrence" and also fall within the policy's "intended or expected exclusion" barring coverage for intentional acts

---

9. At the hearing on the instant motions for summary judgment, held before this Court on July 13, 2001, counsel for Northland argued: "I will concede to the Court if these complaints did allege vicarious liability, which they do not, if these complaints alleged unintentional racial discrimination, which they do not, we wouldn't be here because those claims arguably may be covered...."

designed to cause harm.[10] Accordingly, because the Court finds that intentional discrimination is precluded from coverage under the terms of the policy, the public policy issue need not be reached. Thus, the focus of the Court's inquiry becomes whether the allegations of the five underlying complaints could potentially render HBE liable for unintentional or vicarious discrimination and thereby trigger Northland's duty to indemnify. The Court will address each of the complaints in turn.

 The complaint in *Gilliam v. HBE* alleges that HBE and Kummer embarked on an organized effort to systematically discriminate against its black patrons. According to the plaintiffs, HBE and Kummer implemented discriminatory polices and practices well in advance of BCR and carried out those polices under the direction of HBE's highest officials for the specific purpose of discouraging black persons from seeking accommodations at the hotel during BCR. The allegations do not involve discriminatory actions by a rogue employee acting contrary to corporate policy. Rather, they involve the purposeful actions of HBE's management. Such claims, alleging a corporate policy of intentional discrimination, do not allege an occurrence under the policy as they describe planned behavior, not accidents, happenings, or events. Furthermore, the damages which flow from such conduct cannot be viewed as unexpected or unin-

tended since the intent to cause harm by implementing policies specifically designed to discriminate on account of race may be inferred. Therefore, the allegations of the *Gilliam* complaint also fall within the policy's intended or expected exclusion. Accordingly, because the allegations of the *Gilliam* complaint do not, under any fair reading, describe claims covered under the policy, Northland does not have the duty to indemnify HBE in that case.

 Similarly, the allegations in the complaint-in-intervention brought by the Attorney General of Florida against HBE for a violation of the Florida Deceptive and Unfair Trade Practices Act also do not constitute an occurrence under the policy and fall within the policy's intended or expected exclusion. The Attorney General's claim is based on the facts alleged in the *Gilliam* complaint, and the allegations in the complaint-in-intervention mirror those of the *Gilliam* plaintiffs. The fact that the cause of action alleged does not necessarily require a finding of intent does not translate into potential coverage. *See Mutual Benefit Ins. Co. v. Haver*, 555 Pa. 534, 725 A.2d 743, 745–46 (1999). Rather, the court must look to the facts alleged, rather than to any particular legal theory, when determining whether a claim falls within the scope of insurance coverage.[11] *Id.* Therefore, for the same reasons enunciated above with respect to the *Gilliam* lawsuit, there is no coverage under the

---

**10.** HBE maintains that Northland's grant of insurance coverage for discrimination and civil rights violations is illusory since the policy simultaneously eliminates coverage for intentional behavior. Although the policy's definition of occurrence and the intended or expected exclusion may eliminate a sizable number of discrimination claims from coverage, the policy does cover claims of unintentional discrimination, such as disparate impact, negligent retention and hiring, and vicarious liability claims. Therefore, while the Court is troubled by the apparent contradiction in the policy's coverage, the coverage is not illusory as a matter of law. *See Purrelli v. State Farm*

*Fire and Cas. Co.*, 698 So.2d 618, 620 (Fla. Dist.Ct.App.1997) ("When limitations or exclusions *completely* contradict the insuring provisions, insurance coverage becomes illusory.") (emphasis added).

**11.** HBE argues that the complaint-in-intervention raises the concept of negligence because it includes the allegation that HBE "knew or should have known" that the practices alleged to be discriminatory were unfair or deceptive. (St. of Fla. Comp. in Int. at ¶ 17). The Court construes this negligence language as referring to HBE's knowledge that its actions violated the Deceptive and Unfair Trade Practices Act under Florida law.

policy for the State of Florida's lawsuit against HBE. Northland is not obliged to indemnify HBE for costs incurred in that action.

■ With respect to the allegations of the United States' injunctive suit, the Court reaches a different conclusion. Unlike the Florida Attorney General's complaint-in-intervention, the United States' allegations are not premised solely on the facts alleged by the *Gilliam* plaintiffs. Rather, the complaint generally alleges discriminatory practices at Adam's Mark Hotels throughout the United States. Moreover, the United States' complaint does not specifically allege that the discriminatory practices were intentionally implemented and maintained by corporate management. Accordingly, under a fair reading of the allegations contained in the United States' complaint for injunctive suit, liability could be premised on unintentional discrimination and thus implicate coverage under the policy.

■ The Court's review of the complaints in the *Stephens* and *Hendrix–Frye* lawsuits also reveals that the allegations could potentially trigger coverage. The *Stephens* complaint, though replete with allegations of intentional racial discrimination on the part of HBE and Kummer, also avers facts which could render HBE liable for unintentional discrimination. For example, the complaint acknowledges that one of the questions of fact in the case is whether the alleged acts of discrimination had a disparate impact on members of the class. Furthermore, the facts in the *Stephens* complaint, relating to the replacement of Motown music with music allegedly less acceptable to African–Americans, clearly raise the specter of disparate impact discrimination.

Similarly, in *Hendrix–Frye*, the allegations of the complaint center on the actions of one lone waitress, acting in the course and scope of her employment, who allegedly discriminated against the plaintiffs on account of their race. The *Hendrix–Frye* complaint does not allege a corporate policy of intentional discrimination and clearly raises the possibility of vicarious liability. Accordingly, the allegations of the *Hendrix–Frye* suit could potentially implicate coverage under the policy.

Although the Court finds that the complaints in the United States' injunctive suit, the *Hendrix–Frye* lawsuit, and the *Stephens* lawsuit demonstrate the potential for coverage, that fact alone is not dispositive of Northland's duty to indemnify. Neither party has presented sufficient facts from which this Court may decide whether Northland has a duty to indemnify HBE in those lawsuits. At this juncture, the *Stephens* lawsuit remains pending. Thus, the issue of Northland's duty to indemnify HBE in that case is not ripe for adjudication. Furthermore, with regard to the United States' suit for injunctive relief and the *Hendrix–Frye* suit, which have been disposed of by settlement, the record is devoid of any evidence concerning the terms of the settlement agreements and whether those terms bring the matters within the scope of coverage under the policy. Accordingly, because the Court is unable to determine as a matter of law whether Northland is obligated to indemnify HBE on these lawsuits, the parties' cross-motions for summary judgment are denied to the extent they seek a declaration of coverage for the United States injunctive suit, *Hendrix–Frye*, and *Stephens*.

---

All of the allegations concerning HBE's formulation and implementation of the discriminatory policies, characterize HBE's conduct as premeditated and deliberate. Therefore,

the Court is not persuaded by HBE's attempt to characterize the allegations of the complaint-in-intervention as alleging negligent acts of unintentional discrimination.

### B. Coverage for Injunctive Suits

■ Although the Court cannot conclude, as the record now stands, whether Northland has the duty to indemnify HBE for defense costs incurred in the injunctive suit brought by the United States, the Court will address Northland's general argument that it is under no obligation to indemnify HBE except in suits for money damages. Generally, the cost of complying with mandatory injunctive decrees does not constitute "damages" under the terms of an insurance policy. See *Aetna Cas. & Surety Co. v. Hanna*, 224 F.2d 499 (5th Cir.1955); *Garden Sanctuary, Inc. v. Insurance Co. of N. Am.*, 292 So.2d 75, 76 (Fla.Dist.Ct.App.1974). The policy's broad definition of the term "ultimate net loss," however, compels a different conclusion with respect to Northland's obligation to pay for the cost of defending a suit for injunctive relief.

The policy provides that Northland agrees to indemnify HBE for all sums (including litigation expenses) which HBE shall become legally obligated to pay as damages imposed by law because of personal injury (discrimination) which results from an occurrence during the policy period. The policy further stipulates that indemnity for defense costs applies to covered claims whether such claims are resolved by adjudication or compromise.

When defining "all sums" for which there is indemnity, the policy specifically includes litigation expenses, even though HBE cannot be "legally obligated to pay" its own litigation expenses "as damages." Thus, the insuring agreement is ambiguous. It must therefore be construed against Northland to provide that payment of litigation expenses incurred in defense of a complaint for injunctive relief is encompassed within Northland's obligation to indemnify.

By its interpretation, Northland essentially seeks to change the language of the policy to read that it is only obligated to indemnify for all sums which HBE shall become legally obligated to pay *in a suit for damages.* While such language would clearly indicate that Northland has no duty to indemnify for costs incurred defending purely injunctive suits, the actual language used in the policy is not so clear. Accordingly, Northland may be obligated to indemnify HBE for some or all of the defense costs incurred in defense of the United State's injunctive suit.

### C. Timing of Defense Costs Payments

■ HBE argues that unless and until it is found liable for acts not covered under the policy, Northland must at least reimburse HBE for its defense costs. The Court disagrees. The policy only obligates Northland to indemnify HBE for sums that HBE becomes legally obligated to pay, through adjudication or compromise. Although the policy includes coverage for defense costs, Northland's duty to pay those costs is co-extensive with its duty to indemnify. See *Stonewall Ins. Co. v. Asbestos Claims Mgt. Corp.*, 73 F.3d 1178, 1219 (2d Cir.1995) (subsequent history omitted); *Faulkner v. American Cas. Co. of Reading*, 85 Md.App. 595, 584 A.2d 734, 750 (1991), *cert. denied*, 323 Md. 1, 590 A.2d 158 (1991). Therefore, Northland is under no obligation to pay HBE's defense costs until such time as HBE demonstrates that the resolution of the underlying lawsuits brings those matters within the scope of coverage under the policy.[12]

---

**12.** In its complaint for declaratory relief, Northland seeks reimbursement of funds already paid to HBE in defense of the *Gilliam* lawsuit. Northland does not specifically raise this issue in its motion for summary judgment, nor is the Court able to conclude, based on the present record, to what extent North-

### D. *Number of Occurrences*

Provided that the final judgment or settlement of the underlying lawsuits ultimately shows that coverage exists, a related inquiry will be whether the allegations of those lawsuits constitute only one occurrence under the policy or whether the suits allege separate, multiple occurrences. As the case now stands, three lawsuits remain which could potentially implicate coverage under the policy: the United States' injunctive suit (alleging discriminatory practices at hotels throughout the United States); the *Stephens* lawsuit (alleging disparate impact and disparate treatment of African–Americans by a hotel in Pennsylvania); and the *Hendrix–Frye* lawsuit (alleging discriminatory treatment by one waitress at a hotel in North Carolina).

As stated previously, the record is insufficient to enable this Court to make a conclusive coverage determination. Accordingly, the Court will decline to speculate about whether the injuries alleged in these lawsuits stem from a single nationwide policy of discrimination handed down by HBE or from the unrelated actions of HBE employees at different hotels located in several different states.

### V. CONCLUSION

Based on the foregoing discussion, the Court rules as follows:

(1) Northland's Motion for Summary Judgment (Doc. No. 43) is hereby **GRANTED IN PART AND DENIED IN PART.** To the extent that Northland's motion seeks a declaration that it has no duty to indemnify HBE with respect to the claims alleged in the lawsuit of *Gilliam v. HBE*, 6:99–CV–596–ORL–22C (M.D.Fla.), which is currently pending in the Orlando Division of the Middle District of Florida, the motion is **GRANTED.** The Court

land is entitled to recover sums paid for the defense of non-covered claims. This issue

finds the allegations in *Gilliam v. HBE* allege claims of intentional discrimination that do not allege an occurrence under the policy and are further precluded from coverage under the policy's "intended or expected" exclusion. The Court's decision in this regard extends to both the original claims filed by Dante Gilliam and his co-plaintiffs and the complaint-in-intervention brought by the Attorney General of the State of Florida.

(2) In all other respects, Northland's Motion for Summary Judgment is hereby **DENIED.**

(3) HBE's Motion for Summary Judgment (Doc. No. 43) is likewise **DENIED.**

**DONE** and **ORDERED** in Chambers, Orlando, Florida this ___ day of September, 2001.

will, therefore, be left for another day.