[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-12527
Non-Argument Calendar
_____

D.C. Docket No. 0:12-cv-60628-JIC


THE BURLINGTON INSURANCE COMPANY, INC.,

Plaintiff-Appellee,


versus


NORMANDY GENERAL PARTNERS,
as General Partner of Normandy Village Holdings, LLP, et. al.,

Defendants,


ILEDIEU CIREUS,
DEUNITHE CIREUS,
STANLEY DERIVAL,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(March 19, 2014)

Before HULL, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

Iledieu Cireus, Deunithe Cireus, and Stanley Derival (collectively the

Appellants) appeal the district court's decision granting summary judgment in

favor of the insurer, The Burlington Insurance Company, Inc. (Burlington), in this

declaratory-judgment action regarding the scope of Burlington's duties to defend

and indemnify claims against Normandy General Partners as General Partner of

Normandy Village Holdings, LLP, et al. (Normandy).  The district court concluded

that, based on the applicable policy exclusions, there was no duty to defend or

indemnify.  For the reasons that follow, we affirm.

I.

The underlying tort claim, for which Normandy sought both defense and

indemnification, derived from an event that took place on August 9, 2009, at an

apartment complex owned and operated by Normandy.  On that date, Deunithe

Cireus (Mrs. Cireus) was approached by Shakra Webster, who was then on duty as

a security guard.  Upon hearing the commotion, Mrs. Cireus's brother, Stanley

Derival, stepped outside of the apartment and confronted Webster. Webster punched Derival in the face, grabbed him by the shirt, and stabbed him in the stomach with a knife. When Iledieu Cireus (Mr. Cireus) arrived at the scene, Webster stabbed him in the back and punched him repeatedly. Both Derival and Mr. Cireus were treated for their wounds and survived the incident.

Mr. and Mrs. Cireus filed suit against Normandy for a number of torts, including negligence and negligent training, negligent supervision, respondeat superior, loss of consortium services, negligent failure to provide and/or maintain safe premises, breach of statutory duty to provide safe rental premises, and unconscionable and bad-faith conduct. Derival filed a separate suit against Normandy alleging, relevant to the instant appeal, that Normandy knew or should have known of Webster's violent tendencies and negligently employed him as a security guard.

Normandy sought to have Burlington indemnify it and defend against the state suits. Burlington initially defended Normandy in state court under a reservation of rights. Burlington then brought the instant action for declaratory relief to establish that it was not responsible for defending or indemnifying either Normandy or Webster on the grounds that coverage was barred by the assault,

3

battery, or other physical altercation exclusion in the insurance policy (the

Policy).[1]

Under the terms of the Policy, Burlington was required to pay damages for

"bodily injury" or "property damage" caused by an "occurrence" within the

"coverage territory." The Policy, however, included an exclusion, which stated in

pertinent part that:

> This insurance does not apply to:
> a.    Assault, Battery Or Other Physical Altercation
>    "Bodily injury" or "property damage":
>    . . .
> (2) Arising in whole or in part out of any "assault" or "battery"
> committed or attempted by any person.
> (3) Arising in whole or in part out of any attempt by any person to
> avoid, prevent, suppress or halt any actual or threatened "assault" or
> "battery."
>    . . .
> This exclusion . . . applies to all acts or omissions and all theories of
> liability (direct or vicarious) asserted against any insured, including
> but not limited to all theories of negligence, gross negligence,
> recklessness or intentional tort and shall not be subject to any
> severability or separation of insureds provision in the policy.

The following definitions were included in the Policy:

> "Assault" means any willful attempt or threat to inflict injury upon the
> person of another . . . and any intentional display of force such as
> would give a victim reason to fear or expect immediate bodily harm.

> "Battery" means wrongful physical contact with a person without his
> or her consent that entails some injury or offensive touching.

---

[1] Both state-court cases have been abated pending the outcome of the instant declaratory-judgment action. Additionally, although the Appellants also filed suit against Webster, they do not dispute on appeal that Burlington was under no obligation to defend or indemnify Webster.

Normandy also purchased separate limited assault or battery liability coverage (Coverage D), which provided that:

> [Burlington] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies arising out of "Assault" or "Battery".

The following exclusion applied to Coverage D of the Policy: "'Assault' or 'battery' committed by any insured or agent of any insured."

Burlington filed a motion for summary judgment, first addressing whether it had a duty to defend Normandy. The district court concluded that it did not, finding that the Policy exclusion for assault, battery, or other physical altercation applied because, although some of the Appellants' claims alleged negligence, all of the claims ultimately arose in whole or in part out of the assault and battery committed by Webster. The court further concluded that the claims did not fall within the ambit of the limited assault or battery coverage in the Policy because Webster, as a covered employee, was an insured party. Because Burlington had no duty to defend Normandy in the underlying action, the district court highlighted that Burlington necessarily did not have a duty to indemnify. The instant appeal followed.

II.

We review a district court's grant of summary judgment *de novo*, viewing all evidence and drawing all reasonable inferences in favor of the non-moving party. *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011).  Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "The interpretation of an insurance contract is also a matter of law subject to *de novo* review."  *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1515 (11th Cir. 1997).

"Because federal jurisdiction over this matter is based on diversity, Florida law governs the determination of the issues on this appeal."  *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004).  "Florida law provides that insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties."  *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000).  "The scope and extent of insurance coverage is determined by the language and terms of the policy."  *Bethel v. Sec. Nat'l Ins. Co.*, 949 So. 2d 219, 222 (Fla. Dist. Ct. App. 2006).  The burden rests on the insurer to show that exclusions in a policy apply.  *See, e.g., U.S. Concrete Pipe Co. v. Bould*, 437 So. 2d 1061, 1065 (Fla. 1983).

Finally, the Florida Supreme Court has found that the duty to defend is both distinct from and broader than the duty to indemnify.  Thus, insurers are obligated

6

to defend even if the allegations in the complaint are inconsistent with the actual facts or completely meritless. *See Jones v. Fla. Ins. Guar. Ass'n*, 908 So. 2d 435, 442-43 (Fla. 2005). This duty extends to all claims, even those not within the scope of coverage. *See Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So. 2d 810, 813-14 (Fla. Dist. Ct. App. 1985). "Any doubts regarding the duty to defend must be resolved in favor of the insured." *Jones*, 908 So. 2d at 443. If, on the other hand, the insurer had no duty to defend the insured, it necessarily follows that it had no duty to indemnify. *Fun Spree Vacations, Inc. v. Orion Ins. Co.*, 659 So. 2d 419, 421-22 (Fla. Dist. Ct. App. 1995).

With these principles in mind, we turn to whether Burlington had a duty to defend and indemnify Normandy.

## III.

Under Florida law, an insurer's duty to defend is determined solely from the allegations in the complaint. *Higgins v. State Farm Fire & Cas. Co.*, 894 So. 2d 5, 9-10 (Fla. 2004). An insurer is under no duty to defend if the allegations in the complaint implicate a policy exclusion. *State Farm Fire & Cas. Co., v. Tippett*, 864 So. 2d 31, 35 (Fla. Dist. Ct. App. 2003). In this case, the Appellants allege that their complaints in the state court actions clearly included allegations that trigger coverage under the Policy, including that Normandy was negligent for hiring and retaining Webster as a security guard despite his known history of

7

violent acts.  They maintain that these negligence claims exist independently of the assault and battery incident on August 9, 2009.

Burlington counters that it has no duty to defend because all of the Appellants' claims against Normandy arose out of the assault and battery committed by Webster, and thus, the policy exclusions apply.  We agree.

Florida courts have interpreted the phrase "arising out of" to mean something broader than pure causation and closer to "'originating from,' . . . 'incident to' or 'having a connection with.'"  *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 539 (Fla. 2005).  The negligence claims in the Appellants' complaints are all connected to the underlying attacks by Webster and necessarily "aris[e] out of" the assault and battery.  *See id.*  This interpretation accords with how Florida courts generally have treated negligence claims relating to assault and battery.  *See, e.g., Essex Ins. Co. v. Big Top of Tampa, Inc.*, 53 So. 3d 1220, 1223-24 (Fla. Dist. Ct. App. 2011) (holding that an assault or battery exclusion contained in a flea market operator's insurance policy precluded coverage for negligence claims stemming from injuries a market patron received while being arrested by a security guard); *Miami Beach Entm't Inc. v. First Oak Brook Corp. Syndicate*, 682 So. 2d 161, 162 (Fla. Dist. Ct. App. 1996) (because bar's insurance policy precluded coverage for injuries arising from assault or battery, regardless of the alleged negligence of the insured in preventing such

8

incident, there was no coverage for bar patron injured by a champagne bottle thrown by unknown brawlers).[2]

Therefore, we agree with the district court that the assault, battery, or physical altercation exclusion applies, and coverage does not lie for the Appellants' claims against Normandy.[3]

## IV.

The Appellants also argue that there is an issue of fact as to whether the copy of the Policy that Burlington supplied to the Appellants was a true and correct copy. Appellants highlight that their copy contained a disclaimer, stating that "[n]o representation or warranty is made that this copy is identical in all respects to the policy actually issued to the policyholder." The Appellants fail to acknowledge, however, that on the same page of the copy, it states that it is a "true copy of the policy as indicated by [Burlington's] records." Additionally, Burlington provided an affidavit from its Claims Manager, Frank Dent, attesting to

---

[2] There is one Florida case, *Mactown, Inc. v. Cont'l Ins. Co.*, 716 So. 2d 289 (Fla. Dist. Ct. App. 1998), which rejected applying an assault and battery exclusion to a negligence claim. That decision, however, was premised on the fact that the exclusion also referenced a number of other intentional torts, which the court read to create ambiguity regarding the exclusion's applicability to negligence-based torts. *See id.* at 291-92. Here, though, the exclusion is focused on only one tort and appears to encompass all claims related to that tort, regardless of whether they are intentional or not.

[3] The Appellants offer no argument on appeal with respect to the district court's finding that their claims were not covered under the limited assault or battery coverage under the Policy because Webster qualified as an insured party. As a result, they have abandoned this issue. *See N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1217 n.4 (11th Cir. 2008) (stating that "issues not raised on appeal are abandoned").

9

the validity of the copy of the Policy provided to the Appellants.  There is nothing in the record to refute this representation.  As such, the district court properly concluded that there was no disputed issue of material fact with regard to the content of the policy or the copy provided to the Appellants.[4]

In sum, because Burlington had no duty to defend Normandy in the Appellants' action against Normandy, Burlington had no corresponding duty to indemnify.  *See Fun Spree Vacations, Inc.*, 659 So. 2d at 421-22.  Accordingly, we affirm the final declaratory judgment in Burlington's favor.

**AFFIRMED.**

---

[4] The Appellants also argue (1) the limited assault and battery coverage under the Policy identifies only one address, which was not the address of the subject incident forming the basis of the instant appeal, and (2) their negligence claims are covered by the Policy under the concurrent cause doctrine.  Because we generally do not consider arguments raised for the first time on appeal, *see Ledford v. Peeples*, 657 F.3d 1222, 1258 (11th Cir. 2011), we decline to review these arguments.