Michael I. **GOLDBERG**, not individually but as Chapter 11 Trustee of the estate of the Debtor, Rothstein Rosenfeldt Adler, P.A., et al., and Robert C. Furr, not individually but as Chapter 7 Trustee of the estate of Banyon 1030–32, LLC, and as the Chapter 7 Trustee of the estate of Banyon Income Fund, LP, et al., Plaintiffs,

v.

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Twin City Fire Insurance Company, and Aon Risk Services Inc. of Massachusetts, Defendants.**

## CASE NO. 13–21653–CIV–WILLIAMS

United States District Court,
S.D. Florida.

Signed September 14, 2015

Filed September 15, 2015

Jason Seth Mazer, Cary David Steklof, Danya Pincavage, Matthew Lee Baldwin, Ver Ploeg & Lumpkin, Miami, FL, for Plaintiffs.

Matthew Lee Lines, Isicoff Ragatz & Koenigsberg, Clifford Lawrence Rostin, James Miller Kaplan, Kimberly Sarah Heifferman, Kaplan Zeena, William Earl Davis, Laura Ganoza, Foley & Lardner, LLP, Miami, FL, Michael J. Hartley, Baute Crochetiere & Gilford LLP, Los Angeles, CA, Lisa Rose Bugni, Alston & Bird LLP, Atlanta, GA, for Defendants.

### ORDER

KATHLEEN M. WILLIAMS,
UNITED STATES DISTRICT JUDGE

**THIS MATTER** is before the Court on Plaintiffs' motion for leave to file an amended complaint or for relief from a judgment or an order (DE 84), to which Twin City Fire Insurance Company ("Twin City") and National Union Fire Insurance Company of Pittsburgh, PA., ("National Union") filed responses in opposition (DE 93, 94) and Plaintiffs filed a reply (DE 97, 98).

## I. BACKGROUND

In its May 14, 2015 Order (the "Order"), the Court observed that this case is "yet another in the ongoing litigation saga concerning the misdeeds of the Rothstein Rosenfeldt Adler firm. No party comes to the litigation as a strange to the facts: each has litigated disputes spawned by Rothstein in federal district, federal bankruptcy, and state courts." (DE 80 at 2). Accordingly, as with the May 14, 2015 Order, the Court assumes the Parties' familiarity with the underlying facts, briefing, and the Court's prior rulings.

Plaintiffs filed this action on May 7, 2013 (DE 1) and on July 12, 2013, they filed their first amended complaint. (DE 18). In the amended complaint, Plaintiffs asserted breach of contract claims, statutory bad faith claims under Florida Statute § 624.155, and common law bad faith claims against National Union and Twin City. (*Id.*). Plaintiffs also brought negligence and breach of fiduciary duty claims against Aon, the insurance broker who procured coverage for Gibraltar. (*Id.*). The Parties agreed that all but the breach of contract claims were premature as a matter of law and the Court abated those claims. (*See* DE 47, 55, 70). Both National Union and Twin City filed motions to dismiss the complaint (DE 25, 28), which the Court granted. (DE 80).

Now, more than two years after filing suit, and nearly two months after the Court entered an order dismissing the claims against National Union and Twin City with prejudice, Plaintiffs seek leave to file a second amended complaint. Plaintiffs' second amended complaint would as-

sert the same claims against National Union and Twin City: breach of contract, statutory bad faith, and common law bad faith. As with the first amended complaint, the bad faith claims are premature as a matter of law.

The proposed second amended complaint differs slightly from the amended complaint. First, Plaintiffs removed references to directors Ellis and Harris.[1] Second, Plaintiffs added allegations regarding directors Sanders and Hayworth, alleging that Sanders and Hayworth "were not responsible for providing, nor did they provide, professional banking services to Rothstein or RRA," and contending that "the D & O Defendants were required to avoid engaging in any unsafe or unsound practices in the conduct of Gibraltar's affairs ... Instead, they permitted such practices by ignoring or refusing to act upon reports by Gibraltar's compliance personnel ... advising them of Rothstein's and RRA's improper banking activities." (DE 84–1 ¶¶ 55–56). Plaintiffs second amended complaint alleges that "these regulatory failures allowed the banking relationship with Rothstein and RRA to continue through the date the Ponzi scheme was uncovered." (DE 84–1 ¶ 58).

Third, Plaintiffs added the following legal conclusions: (1) "[t]he acts and omissions for which the Trustees seek to hold the D & O Defendants liable represent failures of internal management and regulatory functions legally imposed on financial institutions. Such conduct is covered by the Primary Policy and Twin City Excess Policy, as these duties do not constitute professional services performed for any bank client or customer." (DE 84–1 ¶ 60); (2) "the allegations in the Underlying D & O Litigation gave rise to the possibility that the D & O Defendants might be held liable for damages as the result of facts that fell within the coverage grant" of the National Union and Twin City Policies (DE 84–1 ¶¶ 96, 108); (3) "the potential for liability created a duty ... to advance defense costs on behalf of the D & O Defendants" under the Policies (DE 84–1 ¶¶ 97, 109); and (4) the Insurers breached their contracts "by [their] wrongful failure and refusal to acknowledge [their] duty to advance defense costs with respect to the claims asserted against the D ·& O Defendants in the Underlying D & O Litigation." (DE 84–1 ¶¶ 98, 110). Finally, Plaintiffs now assert that the settlement and the consent judgment were reasonable and made in good-faith. (DE 84–1 ¶¶ 99–102; 111–13). There are no other significant changes to the proposed amended complaint.

1. *Compare* DE 18 ¶ 40 ("The amended complaint in the Morse Action also asserted claims against Harris, Sanders, Ellis, and Hayworth, individually for negligence.") *with* DE 84–1 44 ("The *draft* amended complaint in the Morse Action also asserted claims against **Sanders and Hayworth,** individually, for negligence.") (emphasis added); *Compare* DE 18 ¶ 42 ("[T]he RRA Trustee provided National Union and Twin City with a draft Adversary Complaint for Damages against Gibraltar executives Harris, Sanders, Ellis, and Hayworth") *with* DE 84–1 ¶ 46 ("[T]he RRA Trustee provided National Union and Twin City with a draft Adversary Complaint for Damages against **various** Gibraltar executives, **including Sanders and Hayworth.**") (emphasis added); *Compare* DE 18 ¶ 46 ("[T]he RRA Trustee filed the D & O Complaint, which sought damages, jointly and severally against John Harris, Charles Sanders, and Lisa Ellis") *with* DE 84–1 ¶ 50 ("[T]he RRA Trustee filed the D & O Complaint, which sought damages, jointly and severally, against **Sanders and other Gibraltar directors and officers**") (emphasis added). Plaintiffs' amended pleading does not alter the fact that the Morse Action and the D & O Action asserted claims against Harris, Sanders, Ellis, and Hayworth nor the Court's consideration of the allegations in the Underlying Litigation. The Court is bound by the actual allegations of the Underlying Litigation, not Plaintiffs' characterization of those allegations.

In moving for leave to amend under Rule 15 of the Federal Rules of Civil Procedure, or for relief from a judgment or order under Rule 60, Plaintiffs present several arguments regarding the Court's Order. The Court addresses the arguments in turn, and for the reasons set forth below, determines that amendment would be futile and that relief from the Order is not warranted.

## II. ANALYSIS

■ First, Plaintiffs argue that the Court erred by construing the exclusion on a motion to dismiss, claiming that "the only cases cited by the Court supporting dismissal on a policy exclusion are foreign, non-binding authority" and that the Court's decision "runs contrary to the general approach adopted in Florida." (DE 84 at 3). Plaintiffs cite no authority in support of this broad proposition.[2] Curiously, in support of a different argument, Plaintiffs cite to *Band v. Twin City Fire*

*Insurance Company*, No. 8:11–CV02332–EAK, 2012 WL 1142396, (M.D.Fla. Apr. 4, 2012), a case explicitly relied upon in the Order, in which the court granted a motion to dismiss under Rule 12(b)(6) because the underlying claims were "unequivocally excluded" from coverage based on a securities and real estate exclusion. The Eleventh Circuit subsequently affirmed that dismissal because the allegations of the underlying complaint "fell within a policy exclusion." *See Band v. Twin City Fire Ins. Co.*, 545 Fed.Appx. 950, 951 (11th Cir.2013). In any event, in addition to citing persuasive cases from federal appellate, federal district, and state appellate courts throughout the country, the Order cited to several Florida cases ruling in favor of a moving party on a motion to dismiss on the basis of a policy exclusion. (See DE 80 at 9–11). And in direct contrast to Plaintiffs' argument, for which they offer no case law, Florida courts routinely grant motions to dismiss on the basis of a policy exclusion.[3]

**2.** This issue, like all of the arguments presented by Plaintiffs, is better raised on a motion for reconsideration or on appeal. As Twin City points out, were the Court to construe the motion for leave as a motion for reconsideration, the Court would still deny the motion as there has not been an intervening change in controlling law, Plaintiffs have not presented any new evidence, and there has not been clear error. *See Smith v. Ocwen Financial*, 488 Fed.Appx. 426, 428 (11th Cir.2012). Moreover, a motion to reconsider cannot be used to re-litigate old matters or raise arguments or present evidence that could have been raised prior to the entry of judgment, which is what Plaintiffs seek to do here. *Id.*

**3.** *See also Ohio Cas. Ins. Co. v. Cont'l Cas. Co.*, 279 F.Supp.2d 1281, 1286 (S.D.Fla.2003) (Ryskamp, J.) (granting motion to dismiss with prejudice because automobile exclusion barred coverage for the underlying claim); *Creative Hospitality Ventures, Inc. v. U.S. Liab. Ins. Co.*, 655 F.Supp.2d 1316, 1340 (S.D.Fla. 2009) (Zloch, J.) *adopting in relevant part report and recommendation of Magistrate Judge Robin S. Rosenbaum* (granting United States

Liability Insurance Company's motion to dismiss because the "ordinary meaning" of an exclusion applied to bar coverage); *Omega Forensic Eng'g, Inc. v. RLI Ins. Co.*, 682 F.Supp.2d 1336, 1343 (S.D.Fla.2010) (Dimitrouleas, J.) (granting motion to dismiss with prejudice because "under the plain language of the policy" an exclusion barring coverage for personal property in the care, custody, or control of the insured applied); *N.P.V. Realty Corp. v. Nationwide Mut. Assur. Co.*, No. 8:14–CV–03235–T–17MA, 2015 WL 3494127, at *3 (M.D.Fla. June 3, 2015) (Kovachevich, J.) (granting 12(b)(6) motion to dismiss with prejudice for failure to state a plausible claim because fungus and decay exclusion barred coverage and the plaintiff's characterization of the damage "cannot survive the explicit exclusions contained in the Policy"); *Posigian v. Am. Reliance Ins. Co. of New Jersey*, 549 So.2d 751, 753–54 (Fla.Dist.Ct.App.1989) (affirming dismissal with prejudice and finding that insurers' "defense of an exclusion under the policy was properly considered by the trial court" and that insured would not be permitted to amend her complaint because, given the exclusion, amendment "would have

Second, Plaintiffs argue that "[c]ourts in this state may not engage in contract interpretation at the motion to dismiss stage, as these arguments are more appropriate for summary judgment." (DE 84 at 3). Plaintiffs cite only two cases in support of this proposition—as opposed to the numerous cases cited by the Court involving insurance contracts and the duty to defend—and both are inapposite. *See Geter v. Galardi S. Enterprises, Inc.*, 43 F.Supp.3d 1322, 1329 (S.D.Fla.2014) (analyzing an employment contract in a Fair Labor Standards Act case); *Managed Care Solutions, Inc. v. Cmty. Health Sys., Inc.*, No. 10–60170–CIV, 2011 WL 6024572, at *8 (S.D.Fla. Dec. 2, 2011) (analyzing a contract regarding the provision of billing collection services for a hospital).[4] Plaintiffs also cite to *S.–Owners Ins. Co. v. Wall 2 Walls Constr., LLC*, 2012 WL 6009752, *4 (M.D.Fla. Dec. 3, 2012),[5] in which the court noted that, although it would not do so based on the specific facts at issue in that case, "[a] defendant may, on a motion to dismiss, raise the issue of whether a complaint contains sufficient factual allega-

tions that show as a matter of law that the particular policy exclusions at issue negate coverage and warrant dismissal of the action with prejudice." *Id.* at *4 (internal citations and quotations omitted). As discussed above and thoroughly in the Court's May 14, 2015 Order, Courts routinely engage in such analysis at the motion to dismiss stage.

Next, Plaintiffs reiterate well-known maxims of insurance policy interpretation (*see* DE 84 at 3–4), which the Court applied in its Order (see DE 80 at 11–15). Plaintiffs also re-hash their argument that the professional services exclusion is ambiguous and that their interpretation is a reasonable one. (*See* DE 84 at 3–5). It is not. (*See* DE 80 at 17–21).

Plaintiffs then argue that various policy provisions are rendered meaningless by the Court's interpretation of the professional services exclusion because, in Plaintiffs' view, the Court read "the exclusion to eliminate coverage for anything other than Securities Claims and Employment Practices Claim [which] renders superflu-

---

been an exercise in futility"); *Kickliter v. Nat'l Union Fire Ins. Co.*, 188 So.2d 872, 876 (Fla. Dist.Ct.App.1966) (Wigginton, C.J.) (affirming dismissal because "the loss is specifically excluded from coverage under the policy by virtue of the exclusionary clause quoted above. Under these circumstances the insureds have no coverage under the policy, nor do they have a claim against [the Insurer]"); *Roberts v. Florida Lawyers Mut. Ins. Co.*, 839 So.2d 843, 846 (Fla.Dist.Ct.App.2003) (affirming trial court's granting of a motion to dismiss with prejudice in part because a reasonable reading of the policy's exclusion barred coverage); *see also Racetrac Petroleum, Inc. v. ACE Am. Ins. Co.*, 446 Fed.Appx. 211, 212 (11th Cir.2011) ("[W]e conclude that the court properly granted the motion to dismiss" and finding that the district court correctly found that the claims for which the insured sought coverage "fall squarely within the policies' pollution exclusion") (construing Georgia law); *Driggers Eng'g Servs. Inc. v. CNA Fin. Corp.*, 113 F.Supp.3d 1224, 1229, 2015

WL 3770340, at *4 (M.D.Fla.2015) (Moody, J.) (stating that "the applicability of a policy exclusion is a matter of law that can be properly resolved on the pleadings" and finding that testing exclusion precluded coverage); *Scottsdale Ins. Co. v. Pursley*, 487 Fed.Appx. 508, 511 (11th Cir.2012) (affirming judgment on the pleadings in favor of insurer because the total pollution exclusion unambiguously barred coverage) (construing Georgia law).

4. Additionally, unlike the contracts at issue in this matter, the contracts at issue in *Managed Care Solutions, Inc.*, were "ambiguous and susceptible to more than one interpretation," and thus inappropriate for resolution on a motion to dismiss. *Managed Care Solutions, Inc.*, 2011 WL 6024572, at *6–8

5. Plaintiff incorrectly cite *S.–Owners Ins. Co. v. Wall 2 Walls Constr., LLC*, 2012 WL 6009752, *4 (M.D.Fla. Dec. 3, 2012), as a case from the Southern District of Florida. It is, in fact, a decision from the Middle District.

ous the Retention Clause and the entire definition of a Claim." (DE 84 at 7). The Court's Order advanced no such interpretation.[6] The Court did not read the exclusion "to cover only employment and securities claims" (DE 84 at 6), nor did it hold that the Policies "do[ ] not cover any claim remotely related to banking" (DE 84 at 2). Rather, the Court simply determined that no coverage was available based on the specific allegations in the Underlying Litigation and that the Policies are not illusory. In doing so, the Court provided two straightforward and inherently non-exhaustive examples of Claims the policies would cover.[7] (*See* DE 80 at 28 ["The Policies provide coverage for many Claims that would not involve professional services for others. *For example,*[8] the Policies provide coverage for wrongful termination claims, harassment claims, retaliation claims, and negligent hiring, training, retention, and

supervision claims."], (emphasis added)). And, the Court cited to two other persuasive decisions, interpreting substantially similar policies and businesses (a company that provided mortgage loans and a bank) in support of its conclusion that the Policies are not illusory. (*See* DE 80 at 28–29).[9]

Plaintiffs also assert that although the Court properly found that an insurer's obligation to advance defense costs is not materially different from a duty to defend,[10] the Court nonetheless erred in applying the duty to defend standard because, in Plaintiffs' view, the Court "undert[ook] its own factual investigation into the underlying litigation, [and] ignored the allegations implicating the possibility of coverage under the Policies." (DE 84 at 10).[11] The Court did not engage in such investigation or analysis; the Court reviewed and considered all of the allegations in the Underlying Litiga-

---

**6.** As Defendants' correctly note, "[t]he Court did not hold that the Professional Services Exclusion eliminates all coverage under the Policy except for Employment Practices Claims and Securities Claims, and Plaintiffs' arguments on this issue contradict the plain terms of the Dismissal Order. The Court used both of these types of claims as 'examples' demonstrating that the Professional Services Exclusion does not make the Policy illusory. The Court also relied on several cases, including Plaintiffs' own authorities, as additional examples of similar professional services exclusions that did not make coverage illusory." (DE 94 at 9).

**7.** The Court was not asked to, nor could it have, conjured up a list of possible Claims for which the Policies would provide coverage. Nor did the Court determine the entire scope of the coverage grant. The Court's task was only to determine if the Policies are illusory. They are not.

**8.** "For example" means "by way of illustration" and "example" is defined as "[a] thing characteristic of its kind or illustrating a rule; illustrative problem or exercise." Oxford American Desk Dictionary 198,199 (1998).

**9.** *See also Langdale Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Penn.,* 609 Fed.Appx. 578, 595–96 n. 9 (11th Cir.2015) (analyzing an "arising out of exclusion and rejecting argument that Court's interpretation of an exclusion made the coverage illusory) (internal quotations and citations omitted) (analyzing Georgia law); *Bond Safeguard Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* No. 6:13–CV–561–ORL, 2014 WL 5325728, at *6 (M.D.Fla. Oct. 20, 2014) (collecting Florida cases and noting that "Florida courts have discussed the phrase 'arising out of' and have held that the phrase is unambiguously broad even when used in an exclusion clause").

**10.** *See Langdale Co.,* 609 Fed.Appx. at 579 ("A court determines whether there was D & O coverage triggering a duty to advance defense costs by looking to the allegations in the underlying lawsuits.")

**11.** Relatedly, Plaintiffs argue that in ruling on the motion to dismiss, the Court must refrain from resolving questions of fact (DE 84 at 2). The Court agrees. However, the motions to dismiss raised no questions of fact and Plaintiffs have not identified any such questions.

tion, accepted them as true, and determined whether those allegations fairly and potentially brought the Underlying Litigation within the policy's coverage or whether the pleadings showed that an exclusion applied to bar coverage (*see* DE 80 at 14–15, 23–27). The Order merely highlighted the most illustrative allegations showing that the professional services exclusion applies to bar coverage for the Underlying Litigation.

Plaintiffs then contend, for the first time, that the Court erred in requiring the Parties to produce the draft amended complaint in the Morse Action and the draft D & O Action,[12] which, according to Plaintiffs, constituted improper fact-finding. (DE 84 at 11; DE 97 at 3). It is beyond peradventure that a court may consider undisputed documents central to and referenced in a complaint without converting a motion to dismiss into a motion for summary judgment. *See, e.g., Day v. Taylor,* 400 F.3d 1272, 1276 (11th Cir.2005) ("Our prior decisions also make clear that a document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, we may consider such a document provided it meets the centrality requirement imposed in *Horsley.*"); *Horsley v. Feldt,* 304 F.3d 1125, 1134 (11th

Cir.2002) (a court may consider documents central to the plaintiffs' claim and undisputed under the incorporation by reference doctrine without converting the motion into summary judgment); *Gross v. White,* 340 Fed.Appx. 527, 534 (11th Cir. 2009) (finding no error in the district court's consideration of a document referenced in the second amended complaint but attached only to the plaintiff's opposition to a motion to dismiss); *Brooks v. Blue Cross & Blue Shield of Florida, Inc.,* 116 F.3d 1364, 1369 (11th Cir.1997) ("Where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal").

Notably, in opposing the motions to dismiss, Plaintiffs agreed that the Court could properly consider the Underlying Litigation. (See DE 35 at n.13 ["Although the D & O Complaint is not attached to the FAC, this Court may consider it without converting this motion into one for summary judgment."]; DE 36 at n.13 [same] ). No Party disputes, nor can they, that the draft amended complaint in the Morse Action or the draft D & O complaint were undisputed, "central to" *and* "referenced in the first amended complaint."[13] Indeed, Plaintiffs' breach of contract claims

12. Plaintiffs also argue that the draft D & O complaint should not have been considered by the Court under Federal Rule of Evidence 408. (DE 84 at 11). No party raised this argument when the Court requested the documents and, in any event, Federal Rule of Evidence 408 is inapplicable here because the draft complaint was not used for the purposes proscribed in Rule 408, but rather formed the basis of Plaintiffs' breach of contract claim.

13. In requesting the documents that Plaintiffs now take issue with, the Court stated: "I don't seem to have the Morse action, the underlying—I have the D & O defendant's action, but I don't seem to have the underly-

ing Morse action or the draft of the D & O complaint that was submitted with the demand letter. I think it was November. I don't remember quite the date. If it is in my file, if you could direct me to it, if it's not through some inadvertence, if somebody could supply that to me because *I think in terms of ruling on a motion to dismiss, obviously I have looked at the pleadings, but then the underlying contract and any other documents which you all agree are central to your claims and there's no dispute about, that would appear to be the Morse action and the draft D & O action.*" (DE 72 at 9:19–10:4) (emphasis added).

are based upon the Insurers refusal to defend the Morse Action and the D & O Action. Significantly, Plaintiffs' only basis for asserting that the Insurers breached their duty with respect to Hayworth, was the draft D & O Action, because, as Plaintiffs alleged in their amended complaint "[w]hile Steven Hayworth was not formally named as a defendant in the D & O Complaint, the Trustee's November 22, 2011 demand letter constitutes a Claim against him for monetary relief under the National Union and Twin City Excess Policies." (DE 18 at ¶ 46).

Unlike their earlier argument in which Plaintiffs inaccurately critique the Court's citation to "foreign non-binding authority," Plaintiffs next argue that the Order disregards persuasive authority in finding that the professional services exclusion is not several. Specifically, Plaintiffs cite to *Great Am. · Ins. Co. v. Geostar Corp.*, No. 09–12488–BC, 2010 WL 845953, at *12–13 (E.D.Mich. Mar. 5, 2010), a foreign, unpublished, nonbinding and inapposite authority. The professional services exclusion in *Geostar,* in contrast to the exclusion in the Policies here, contained a specific severability provision, which was critical to that court's interpretation of the exclusion. (*See* DE 80 at 20 n.13); *see also Geostar Corp.,* 2010 WL 845953, at *13.[14] As discussed in the Order, Plaintiffs "failed to provide any precedent from any court to support their contention than an ambiguity exists and that the Professional Services Exclusion applies severally, particularly in

the absence of a specific severability provision." (DE 80 at 20). Plaintiffs still have failed to do so.

In criticizing the Court for failing to consider "persuasive authority," Plaintiffs also cite to *Associated Community Bancorp, Incorporated. v. The Travelers Companies Incorporated,* No. 3:09–CV–1357 JCH, 2010 WL 1416842, (D.Conn. Apr. 8, 2010) *aff'd,* 421 Fed.Appx. 125 (2d Cir. 2011) and *Neighborhood Housing Services of America, Incorporated v. Turner–Ridley,* 742 F.Supp.2d 964, 971 (N.D.Ind.2010). Not only did the Court consider both *Associated Community Bancorp* and *Turner–Ridley,* but those cases were expressly cited to with approval in determining that the professional services exclusion applied and that the Policies are not illusory (see DE 80 at 10, 22 n.15, 28, 29). *See also Turner–Ridley,* 742 F.Supp.2d at 971–73 (professional services exclusion barred coverage when insured was alleged to have breached contractual duty to collect payments, segregate funds, maintain accurate records, and make accurate reports to loan payoffs and rejecting argument that "because [the insured's] core business practices constitute professional services" the policy was illusory, finding that the policy "covers many reasonably expected circumstances that would not involve professional services"); *Associated Cmty. Bancorp, Inc.,* 2010 WL 1416842, at *10 (granting 12(b)(6) motion to dismiss because the underlying claims fell "squarely within an

---

**14.** "Finally, there is a specific severability provision in the exclusions portion of the underlying Travelers D & O policy. The provision provides that '[n]o conduct of any Insured Person shall be imputed to any other Insured Person to determine the application of any of the Exclusions set forth' in the exclusions section of the D & O policy. Travelers D & O Policy IV. Consequently, even if the conduct of one officer, director, or employee amounts to an error or omission in rendering or failing to render a professional

service and is excluded from coverage, the remaining officers and directors are still covered as long as they did not play a role in rendering or· failing to render those professional services. The severability provision does not, however, protect GeoStar or other covered entities from liability for the professional errors and omissions of their employees." *Great Am. Ins. Co. v. Geostar Corp.,* No. 09–12488–BC, 2010 WL 845953, at *13 (E.D.Mich. Mar. 5, 2010).

unambiguous reading of either the insolvency exclusion … or the professional services exclusion" and rejecting argument that professional services exclusion eviscerated the policy because every action taken by a bank involves professional services).

Plaintiffs also argue that the Order "forecloses coverage for purely internal conduct so long as a customer is affected in any form or fashion." (DE 84 at 13). Despite Plaintiff's claim, the Order is limited to the allegations specifically plead in the Underlying Litigation and does not implicitly or explicitly foreclose coverage for all internal conduct tangentially affecting a customer. Here, however, as discussed at length in the Order, the Underlying Litigation clearly alleged that the "internal failures" and "regulatory functions" were undertaken with the intent of "rendering substantial assistance to Rothstein" in order to "advise" "assist" and "enable" him and his Ponzi scheme. (*See, e.g.,* DE 25–1 ¶¶ 36, 76, 81). Thus, the allegations in the Underlying Litigation make clear that any such internal or regulatory failures were performed for the purpose of enabling, assisting, and aiding Rothstein and therefore constitute professional services *for others*. The Order does not foreclose coverage for all banking services; rather, the Order only forecloses coverage in this matter based on the allegations in the Underlying Litigation and the Policies' plain language.

Plaintiffs also contend that the "presence of both types of allegations" *i.e.,* professional services for others and "internal management or regulatory functions" establishes a duty to defend under Florida law.[15] Notwithstanding the absence of allegations regarding purely internal functions wholly unrelated to the rendering of professional services for Rothstein, Plaintiffs' argument is inconsistent with their own policy interpretation. Plaintiffs allege "that the Exclusion only applies to a Claim, which is defined to encompass the entirety of a civil proceeding commenced against the insureds." (DE 84 at 4). Accordingly, if the litigation, as a whole, arises out of the rendering or failure to render professional services for others, then no coverage is available. Plaintiff's efforts to cull out all directors other than Hayworth and Sanders is unavailing under their policy interpretation, because the question is whether the underlying complaints, considered in their entirety, arise out of the rendering or failure to render professional services for others.[16] And a review of the allegations in the Underlying Litigation makes clear that the lawsuits, as a whole, arise out of the insureds' rendering or failure to render professional services for others (Rothstein).

### III.  CONCLUSION

■  The Court declines to exercise its discretion to permit Plaintiffs to file a second amended complaint, more than two

---

15.  *See also Langdale,* 609 Fed.Appx. at 591 (noting that in determining whether a duty to advance defenses costs is triggered under a D & O policy, the "focus is on the genesis of the underlying plaintiffs' claims" and finding that when underlying complaint alleges that misconduct undertaken in an insured capacity is "so inextricably entwined" with misconduct excluded under the policy, no coverage was available). As in this case, to the extent that there were any allegations relating solely to internal regulatory functions, such allegations

are so inextricably entwined with the D & O Defendants performance, or failure to perform professional services, for others that the exclusion applies and no duty to advance defense costs was triggered.

16.  The Court found that regardless of whether Claim encompassed the entirety of the civil proceedings or each count, the Policies did not provide coverage because of the professional services exclusion (*see* DE 80 at 25–26).

years after filing suit and after several years of litigation involving the subject-matter of this case. Plaintiffs argue that they "are entitled to leave to amend because they are capable of stating claims for relief under a reasonable interpretation of the Exclusion." (DE 84 at 16). But no amount of repleading can alter the allegations actually plead in the Underlying Litigation, which are excluded from coverage under the Policies.[17] Moreover, the proposed second amended complaint is based on arguments regarding the Policies already presented to, and rejected by, the Court—particularly, Plaintiffs' contention that the Underlying Litigation arises out of internal or regulatory functions and not professional services for others. (*See* DE 84 at 16).

Were the Court to permit Plaintiffs to file the second amended complaint, Defendants would be entitled to move for dismissal under Rule 12(b)(6), and attach to that motion the draft amended complaint from the Morse Action, the complaint from the D & O Action, and the draft D & O Action complaint—as those documents are

undisputed and central to Plaintiff's claims—and the Court would apply the same duty to defend analysis and reach the same conclusion. Consequently, the Court finds that permitting Plaintiffs to file a third complaint would be futile.[18] *See Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir.1999) ("This court has found that denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal"); *Raja v. Englewood Cmty. Hosp., Inc.*, No. 8:12–CV–02083–JDW, 2013 WL 5964589, at *3 (M.D.Fla. Nov. 7, 2013) ("The futility threshold is akin to that for a motion to dismiss; thus, if the amended complaint could not survive Rule 12(b)(6) scrutiny, then the amendment is futile and leave to amend is properly denied").

Therefore it is hereby **ORDERED AND ADJUDGED** that Plaintiffs' motion for leave to amend (DE 84) is **DENIED**. The Court will enter an order for partial final judgment under Rule 54(b) in a separate opinion.

17. Plaintiffs argue that the Insurers have failed to "explain why the SAC's allegations solely against Steven D. Hayworth and Charles Sanders fail to implicate the insurer's duty to defend. The SAC alleges specific managerial misconduct by Hayworth and Sanders, who had no involvement in providing professional services to Rothstein or RRA." (DE 98 at 4; *see also* DE 98 at 8). Plaintiffs misstate the law in this respect. "A court determines whether there was D & O coverage triggering a duty to advance defense costs by looking to the allegations in the *underlying lawsuits,* " not by looking at the allegations in the proposed second amended complaint. *See Langdale Co.*, 609 Fed.Appx. at 579 (emphasis added).

18. Plaintiffs also contend that they should be permitted to amend and take discovery because "[a]n insurer's duty to indemnify—its ultimate coverage obligation—is determined by the underlying facts adduced at trial or developed through discovery during the litiga-

tion." (DE 98 at 8). Thus, Plaintiffs believe they are entitled to develop facts regarding the duty to indemnify notwithstanding the fact that no duty to defend exists. This has no basis in law: "[I]f the insurer had no duty to defend the insured, it necessarily follows that it had no duty to indemnify." *Burlington Ins. Co. v. Normandy Gen. Partners*, 560 Fed.Appx. 844, 847–48 (11th Cir.2014). Moreover, an element of recovering under a *Coblentz* agreement, as Plaintiffs recognize (*see* DE 98 at 7 n.7), is the "wrongful refusal to defend." *See Stephens v. Mid–Continent Cas. Co.*, 749 F.3d 1318, 1322 (11th Cir.2014) (discussing that to recover under a Coblentz agreement, plaintiff must prove that the insurer "wrongfully refused to defend [ ] in the underlying state court action"). Because the Insurers had no duty to defend or advance defense costs for the Underlying Litigation, they could not have wrongfully refused to defend. As such, the question of indemnity not only is foreclosed by this finding but also is irrelevant.

**DONE AND ORDERED** in chambers in Miami, Florida, this *14* th day of September, 2015.