JOHN ANTOON II, United States District Judge
Plaintiff Scottsdale Insurance Company brings this action seeking a declaratory judgment as to its obligations to defend and indemnify its insured, Defendant Outrigger Beach Club Condominium Association, Inc., (the Association) in connection with a lawsuit filed against the Association (the Underlying Litigation). In the Underlying Litigation, Bluegreen Resorts Management, Inc. (Bluegreen) sued the Association based on the Association's alleged improper termination of a management agreement, which allegedly caused Bluegreen reputational injury and other damages.
Currently before the Court is the Motion for Final Summary Judgment (Doc. 28) filed by Scottsdale, to which the Association filed a Response in Opposition (Doc. 32). Scottsdale filed a Reply (Doc. 35). Having considered the parties' submissions, the record, and the pertinent law, the Court concludes that Scottsdale's motion must be granted.
I. Uncontested Facts
The Association is a condominium/timeshare association located in Ormond Beach, Florida. (Ins. Policy, Ex. A to Doc. 1, at 4). As alleged in the second amended complaint of the Underlying Litigation, the Association and Bluegreen entered into a management agreement in September of 1981, designating Bluegreen as the Association's sole management firm in charge of, for instance, hiring staff, reviewing contracts, and maintaining financial records. (Ex. B to Doc. 1 at 3). This management agreement, as alleged by Bluegreen, was in effect until August 31, 2017. (Id. at 6). Bluegreen alleges that the Association breached the management agreement by improperly terminating the contract, causing reputational injury and damages. (Id. at 10). According to the underlying complaint, on July 10, 2015, the Association's board voted to terminate the agreement and sent a 60-day notice-of-termination letter to Bluegreen. (Id. ). Despite Bluegreen's objections enumerated on July 21, 2015, the Association included information regarding the termination of Bluegreen in its August 2015 newsletter.[1] (Id. at 8). On August 21, 2015, the Association's board selected a new management company, and "on or about September 9, 2015" Bluegreen met with the incoming management company "to provide the items and information related to the operation of the Association and the Outrigger Beach Club." (Id. at 9, ¶¶ 32-33).
*1211 According to the Association's Counterclaim (Doc. 11 at 6) filed in the present action, Bluegreen's claims in the Underlying Litigation "trigger Scottsdale's duty to defend the Association for the claims asserted ... pursuant to the Policy." (Id. ). Scottsdale issued the relevant commercial general liability policy (the Policy) to the Association with a policy period beginning September 10, 2015, and ending September 10, 2016. Scottsdale has provided a defense to the Association in the Underlying Litigation for one year under a reservation of rights and now seeks a declaratory judgment that the Policy does not provide coverage to the Association because the claim: 1) does not seek damages for "bodily injury" or "property damage" under the Coverage A Insuring Agreement, 2) does not arise from "personal and advertising injury" under the Coverage B Insuring Agreement, and 3) even if it does arise from "personal and advertising injury," falls squarely within the Policy's exclusion for "personal and advertising injury" arising out of a breach of contract. (Doc. 28). Scottsdale contends that it does not have a duty to defend or indemnify the Association in the Underlying Litigation. (Id. )
II. Legal Standard
Summary Judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact remain. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue of fact is material if it is a legal element of the claim under the applicable substantive law which could affect the outcome of the case. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). An issue is genuine if the complete record could lead a rational trier of fact to find for the nonmoving party. Id.
A court may grant summary judgment " 'in declaratory judgment actions seeking a declaration [as to insurance coverage] when the insurer's duty, if any, rests solely on the applicability of the insurance policy, the construction and effect of which is a matter of law.' " TIG Ins. Co. v. Smart Sch., 401 F.Supp.2d 1334, 1337 (S.D. Fla. 2005) (quoting Northland Cas. Co. v. HBE Corp., 160 F.Supp.2d 1348, 1358 (M.D. Fla. 2001) ). "In a declaratory judgment action, 'if the allegations in the complaint alleging a claim against the insured either are acts not covered by the policy or are excluded from the policy's coverage, the insurer is not obligated to defend or indemnify.' " Id. (quoting Northland, 160 F.Supp.2d at 1357-58 ).
III. Discussion[2]
Under Florida Law, an insurer's duty to defend its insured is governed by whether the allegations of the underlying complaint fall within the insurance policy's coverage. Nat'l Union Fire Ins. Co. v. Lenox Liquors, Inc., 358 So.2d 533, 536 (Fla. 1977). If the complaint alleges any claim that could potentially fall, either in full or in part, under the policy, the insurer must defend the entire action. Colony Ins. Co. v. Barnes, 410 F.Supp.2d 1137 (N.D. Fla. 2005). This is often referred to as the "eight corners rule," referencing the four corners of the complaint and the four corners of the policy, Id. Additionally, under Florida law, where there is no duty to defend, there is no corresponding duty to indemnify. Burlington Ins. Co. v. Normandy Gen. Partners, 560 Fed.Appx. 844, 849 (11th Cir. 2014).
*1212 The question of the extent of insurance coverage is a question of law determined by the court. Diocese of St. Petersburg, Inc. v. Arch Ins. Co., 188 F.Supp.3d 1289, 1293 (M.D. Fla. 2016). The parties do not dispute that Florida law governs the interpretation of the insurance policy at issue here. Under Florida law, an insurance policy is treated like a contract, and as such, ordinary contract construction and interpretation principles apply. Id. The language and terms of the insurance policy define the scope and extent of coverage. Id. If the language is unambiguous, the policy must be enforced as written. Siegle v. Progressive Consumers Ins. Co., 819 So.2d 732, 734-35 (Fla. 2002).
If a policy is " 'sceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage,' " ambiguities should be resolved in favor of the insured. Travelers Indem. Co. v. PCR Inc., 889 So.2d 779, 785-86 (Fla. 2004) (quoting Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So.2d 161, 165 (Fla. 2003) ). Clauses providing coverage are interpreted broadly to effect the greatest amount of coverage within the policy's limits. Westmoreland v. Lumbermens Mut. Cas. Ins. Co., 704 So.2d 176, 179 (Fla. 5th DCA 1997). On the other hand, exclusionary clauses are strictly construed. State Farm Fire & Cas. Co. v. CTC Dev. Corp., 720 So.2d 1072, 1075 (Fla. 1998). While exclusionary clauses cannot be relied on to create coverage, an insurance policy should be read in "the entirety of its terms and conditions." CTC Dev. Corp., 720 So.2d at 1075 ; see also § 627.419(1), Fla. Stat. (1997). But, the "terms of an insurance policy should be taken and understood in their ordinary sense and the policy should receive a reasonable, practical and sensible interpretation consistent with the intent of the parties-not a strained, forced or unrealistic construction." Siegle, 819 So.2d at 736.
In the Underlying Litigation, Bluegreen alleged that "The Association has breached the Management Agreement by means of improperly terminating the Management Agreement prior to its expiration date of August 31, 2017. As a consequence of the Association's breach of the Management Agreement, Bluegreen has suffered reputational injury and other damages in excess of $100,000." (Ex. B to Doc. 1, ¶¶ 36-37).
a. Personal and Advertising Injury
The Policy provides that Scottsdale will defend and indemnify the Association for personal and advertising injury. (Ex. B to Doc. 1 at 15, § 1 (Coverage B)(1)(a) ). "Personal and advertising injury" is defined, in relevant part, as "injury ... arising out of one or more of the following offenses: ... Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." (Id. at 23, § V(14) ). "Advertisement" is further defined as "a notice that is broadcast or published to the general public or specific market segments about [the Association's] goods, products or services for the purpose of attracting customers or supporters." (Id. at 22, § V(1) ). The Scottsdale policy also includes an exclusionary clause providing that coverage does not apply to personal or advertising injury arising out of a breach of contract. (Id. at 15, § 1 (Coverage B)(2)(f) ).
The Association argues that the personal and advertising injury portions of its coverage are implicated because Bluegreen allegedly suffered reputational injury. These injuries, the Association contends, are premised on the Association's August 2015 newsletter and Bluegreen's September meeting with the new management company, both of which allegedly caused reputational damages. According to the *1213 Association, the alleged "injury or disparagement of goods and services" did not arise out of a breach of the management agreement and therefore is outside the breach-of-contract exclusion. In contrast, Scottsdale contends that Bluegreen's damages are for economic loss and thus are not a result of personal or advertising injuries. Scottsdale additionally asserts that the policy's exclusion for injuries arising out of a breach of contract applies.
Any reputational injury allegedly caused by the August 2015 newsletter falls within the definition of "personal and advertising injury." As alleged, the newsletter qualified as a notice about services sent to the Association's members to garner support that disparaged Bluegreen's goods and services, causing injury. (See Ex. B to Doc. 1 at 23, § V(14) ). Reading the underlying complaint and policy in a light most favorable to the insured, it is possible that the August 2015 Newsletter actually harmed Bluegreen's reputation, causing a "personal and advertising injury" under the terms of the policy. On the other hand, as discussed below, Bluegreen alleges no facts pointing to reputational injury occurring from the meeting with new management around September 9th. As such, only the August 2015 newsletter could trigger coverage.
While the underlying complaint points to a potential advertising injury caused by the August 2015 newsletter, Scottsdale has no duty to defend or indemnify due to the policy's breach-of-contract exception. The underlying complaint does not request damages for any and all representational injuries caused by the Association. Rather, Bluegreen limits its pleading to "reputational injury and other damages" that are "a consequence of the Association's breach of the management agreement." The underlying principle in the terms "as a consequence of" and "arising out of" is that, in this case, the injury results from an act.[3] Regardless of whether the August 2015 newsletter occurred as a result of the breach, the only reputational damages Bluegreen requests are those that arise out of the breach of the management agreement. As such, under the clear language of the policy, the breach-of-contract exclusion applies to any alleged reputational injury and bars coverage for the claim.
b. Policy Period
Scottsdale also contends that no events related to the alleged breach of contract and resulting damages occurred within the policy's effective period of September 10, 2015, to September 10, 2016. The Court agrees.
Coverage B of the Policy limits the application of the policy "to 'personal and advertising injury' caused by an offense arising out of [the Association's] business but only if the offense was committed ... during the policy period." (Id. at 15, § 1 (Coverage B)(1)(b) ). Additionally, Coverage B specifically excludes " 'Personal and advertising injury' arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period." (Id. at 16, § 2(c) ).
*1214 In its allegations, Bluegreen pointed to several events, most of which clearly occurred before the policy's effective period-the July 10, 2015 board vote to terminate the management agreement; the August 21, 2015 meeting to install a new managing company; and the August 2015 newsletter. Additionally, Bluegreen details a series of letters regarding the alleged wrongful termination that were sent before September 10, 2015. Under the plain meaning of the contract, none of these occurrences could trigger coverage. Specifically, no argument is made that the August 2015 newsletter-from which the Association asserts the "personal and advertising injury" arose-was not published before the beginning of the policy period.
The Association asserts that Bluegreen's meeting with the Association's new managing company "on or about September 9, 2015 to provide the items and information related to the operation of" the Association could place the Underlying Litigation within the coverage period. But even if the meeting did occur within the policy period, Bluegreen presents no allegations in the underlying complaint that this meeting caused any damage to its reputation or constituted a breach of the management agreement. Rather, the meeting was an exchange of information between management companies. As such, the Underlying Litigation does not fall within the policy because, as alleged, any offense that occurred took place outside of the policy period
The plain language of the insurance policy controls. No events, as alleged, potentially causing injury occurred during the policy period. Thus, Scottsdale has no duty to defend or indemnify the Association in the Underlying Litigation.
c. The Association's Affirmative Defenses
The Association asserts that the Motion for Summary Judgment should be denied because Scottsdale failed to overcome the Association's affirmative defenses of waiver, laches, and estoppel. According to the Association, it was prejudiced because Scottsdale failed to initiate the present action to disclaim coverage for more than one year despite being aware of all the facts and circumstances of the underlying case. In response, Scottsdale contends that the affirmative defenses fail as a matter of law.
Under Florida law, the general rule is that "the insurer's coverage or restrictions on the coverage cannot be extended by the doctrine of waiver and estoppel." Doe v. Allstate Ins. Co., 653 So.2d 371, 373 (Fla. 1995) (internal quotations omitted). "[A]n exception to the rule [ ] provides that when an insurance company assumes the defense of an action, with knowledge, actual or presumed, of facts which would have permitted it to deny coverage, it may be estopped from subsequently raising the defense of non-coverage." Id. (quoting Cigarette Racing Team, Inc. v. Parliament Ins. Co., 395 So.2d 1238, 1239-1240 (Fla. 4th DCA 1981) ) (internal quotations omitted). But, these estoppel theories were established in situations where the insurers failed to issue reservation of rights letters to the insured. Id. Reservation of rights letters diminish the likelihood that insureds will experience a "false sense of security" or fail to investigate a potential lack of coverage on its own." Hannover Ins. Co. v. Dolly Trans Freight, Inc., No. 6:05-cv-576-Orl-19DAB, 2006 WL 1169496, at *7 (M.D. Fla. May 2, 2006). Thus, the exception only applies when the insured proves prejudice and the insurer fails to issue a reservation of rights letter to the insured.
*1215 Doe, 653 So.2d at 372 ; see also Coregis Ins. Co. v. McCollum, 961 F.Supp. 1572, 1578 (M.D. Fla. 1997).
In the case at hand, Scottsdale did issue a reservation of rights letter on February 8, 2016. (Ex. A to Doc. 35). The Association points to no binding precedent applying equitable doctrines to a coverage defense[4] when the insurer issues a reservation of rights letter. Additionally, the Association does not claim it was unaware of the effect of the reservation. Therefore, the affirmative defenses of estoppel, waiver, and laches do not preclude entry of summary judgment for Scottsdale.
d. Timing of Motion for Summary Judgment
The Association argues that Scottsdale's motion should be denied as premature because it was filed before adequate opportunity for discovery. Scottsdale, on the other hand, asserts that discovery is neither required nor necessary because the interpretation of an insurance policy is a question of law and the affirmative defenses fail as a matter of law.
Rule 56 implies that "summary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery." Snook v. Tr. Co. of Ga. Bank of Savannah, N.A., 859 F.2d 865, 870 (11th Cir. 1988). In the early stages of discovery, a district court may grant summary judgment only if " 'further discovery would be pointless' and the movant is 'clearly entitled to summary judgment.' " Blumel v. Mylander, 919 F.Supp. 423, 428 (M.D. Fla. 1996) (quoting Robak v. Abbott Labs., 797 F.Supp. 475, 476 (D. Md. 1992) ). It is the non-moving party that "bears the burden of calling to the district court's attention any outstanding discovery." Cowan v. J.C. Penney Co., 790 F.2d 1529, 1530 (11th Cir. 1986).
In the present case, the Association asserts that discovery is necessary regarding the affirmative defenses, specifically Scottsdale's delay in filing the present action and the Association's reliance on defenses and counterclaims generated by Scottsdale. But, as stated above, this argument fails because the Association's affirmative defenses fail as a matter of Florida law. Estoppel theories may only apply when the insured proves prejudice and the insurer fails to issue a reservation-of-rights letter to insured. Doe, 653 So.2d at 372. As such, any discovery on the affirmative defenses would be "pointless." Blumel, 919 F.Supp. at 428.
IV. Conclusion
It is hereby ORDERED that:
1. Scottsdale's Motion for Final Summary Judgment is GRANTED. Scottsdale Insurance Co. established that it is entitled to prevail on its claim for a declaratory judgment of no duty to defend or indemnify its insured in the Underlying Litigation and that Outrigger Condominium Association, Inc. has not prevailed on its counterclaims.
2. The Clerk is directed to enter judgment providing that Plaintiff Scottsdale Insurance Company prevails on its claim seeking a declaratory judgment that *1216 Scottsdale had no duty to defend or indemnify its insured-Outrigger Condominium Association, Inc.-with regard to the claims asserted against the Association in Case No. 2015 31585 CICI in the Circuit Court for the Seventh Judicial Circuit for Volusia County, Florida. The Clerk is also directed to enter judgment against Defendant Outrigger on its breach of contract counterclaim and its claim seeking a declaratory judgment regarding Scottsdale's duty to defend. Thereafter, the Clerk shall close this file.
DONE and ORDERED in Orlando, Florida, on January 5, 2018.

The August 2015 newsletter reads: "On July 10, 2015, your Board of Directors approved the issuance of a sixty day termination letter to Bluegreen Resorts Management, Inc., as our management company. Proposals have been received from other management companies and are currently being evaluated. You will be kept informed of all happenings during this period." (Ex. G to Underlying Compl., Ex. B to Doc. 1, at 61-65).

Because the Association does not argue the Underlying Litigation is covered under Coverage A, the Court will only address Coverage B.

See Arise. Black's Law Dictionary (9th ed. 2009) ("1. To originate; to stem (from); 2. To result (from)"); Arise from/out of, English Oxford Dictionary, https://en.oxforddictionaries.com/definition/us/arise (last visited Jan. 3, 2018) ("Occur as a result of"); see also In consequence of, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/in%20consequence%20of (last updated Nov. 15, 2017) ("as a result of (something specified)"); In consequence, English Oxford Dictionary, https://en.oxforddictionaries.com/definition/us/consequence, (last visited Jan. 3, 2018) ("As a result").

As Scottsdale points out, the Association relies on cases in which the insurance company was asserting forfeiture of a policy, rather than lack of coverage. Florida law is "well established that the doctrine of waiver and estoppel based upon the conduct or the action of the insurer (or an agent) is not applicable to matters of coverage as distinguished from grounds for forfeiture. That is, while an insurer may be estopped by its conduct from seeking a forfeiture of a policy, the insurer's coverage or restrictions on the coverage cannot be extended by the doctrine of waiver and estoppel."Doe, 653 So.2d at 373 (citation and internal quotations omitted).